# IN THE SUPREME COURT OF TENNESSEE
## AT COLUMBIA[1]
### February 6, 2009 Session

## CRACKER BARREL OLD COUNTRY STORE, INC. ET AL. v. RICHARD EPPERSON ET AL.

**Appeal by permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 05-2220-II          Carol McCoy, Chancellor**

---

**No. M2006-02424-SC-R11-CV - Filed May 1, 2009**

---

We accepted Cracker Barrel's application for permission to appeal to determine whether the contractual language–"[a]ll costs and expenses of any suit or proceeding shall be assessed against the defaulting party"–creates a contractual right to attorney fees for the successful party in a lawsuit. We determine that neither this contractual language nor the doctrine of judicial estoppel creates a right to recover such fees. Accordingly, the Court of Appeals' judgment denying an award for attorney fees is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Appeals Affirmed**

CORNELIA A. CLARK, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., and GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Nancy S. Jones and Kristin J. Hazelwood (at trial), Nashville, Tennessee, and C. Dewees Berry (on appeal), Nashville, Tennessee, for the appellants, Cracker Barrel Old Country Store, Inc., and Cracker Barrel Associates, LLC.

Richard M. Smith (at trial), Nashville, Tennessee, and William T. Ramsey and Jonathan H. Wardle (on appeal), Nashville, Tennessee, for the appellees, Richard Epperson and Timothy Causey.

---

[1]Oral argument was heard at Columbia State Community College in Columbia, Tennessee, as a part of this Court's Supreme Court Advancing Legal Education for Students (S.C.A.L.E.S.) project.

## OPINION

## Factual & Procedural History

Cracker Barrel Old Country Store, Inc., and Cracker Barrel Associates, LLC, (collectively "Plaintiffs") own certain real property on Sidco Drive in Davidson County.[2] Mr. Richard Epperson and Mr. Timothy Causey (collectively "Defendants") own real property that adjoins Plaintiffs' property. Both parcels have, since October 31, 1980, been subject to a Declaration of Reciprocal Rights and Easements and Restrictive Covenants ("Declaration"), created by the original developer[3] of these two parcels and several others in the same development.

In April 2005, Defendants submitted to the Nashville/Davidson County Metropolitan Council a proposal to expand the building on their property. Defendants' property is adjacent to Plaintiffs' property. Upon learning of the plan, Plaintiffs notified Defendants that they believed the new construction would violate covenants 1(a), 2, and 3 of the Declaration, granting mutual vehicular easements to the adjoining owners and prohibiting obstruction to traffic flow.[4] Defendants disagreed and persisted in seeking approval for their plan.

---

[2]Cracker Barrel Associates, LLC, is a Florida limited liability company which has, since 2003, owned the property at issue in this case. Cracker Barrel Old Country Store, Inc., is a Tennessee corporation that, since 1980, has been the lessee of the property.

[3]The original developer is not a party to this suit, and the record reflects that he has had no involvement at any stage of this litigation.

[4]Covenant 1 of the Declaration states:

(a) The term "Building Areas" shall mean those portions of each Lot which shall be used for the location and construction of buildings and expansions of the same, which may from time to time be made, including any areas used for landscaping and curbs, such areas to conform generally, but not exactly, to the Building Areas as shown upon the Site Plan.
(b) The term "Access and Parking Easement Areas" shall mean all of the Property outside the boundaries of the building areas.

Covenant 2 states:

Owner does hereby establish and create for the benefit of each person, firm, or corporation hereinafter owning, leasing, or visiting any part of the Property a mutual, reciprocal, and nonexclusive easement, license, right, and privilege of passage and use, both pedestrian and vehicular, for purposes of ingress and egress and motor vehicle parking in, to, upon, and over any and all of the Access and Parking Easement Areas as now or hereafter located.

Covenant 3 states:

No fence or other obstruction (other than curbs, walkways, light poles, pylon signs [if permitted], and landscaped areas) that would interfere with the free flow of vehicular or pedestrian traffic shall be placed or erected upon any portion of the Access and Parking Easement Areas.

On August 29, 2005, Plaintiffs filed suit against Defendants alleging that Defendants' intent to expand a building located on Defendants' property violated the Declaration's express terms. In their complaint, Plaintiffs sought injunctive relief and requested an award of attorney fees "pursuant to Paragraph 9 of the Declaration."

The course of the litigation was hard-fought. By order entered October 24, 2005, after an October 12 hearing, the trial court granted Plaintiffs' motion for temporary injunctive relief. On October 21, 2005, Plaintiffs filed a Motion for Costs and Expenses, seeking costs and expenses incurred in seeking the temporary injunction, including almost $62,000 in attorney fees to that point. Plaintiffs' request for reimbursement was premised on Paragraph 9 of the Declaration, which provides as follows:

> The easements, restrictions, benefits, and obligations herein set forth shall create mutual benefits and servitude of the Property running with the land and shall inure to the benefit of and be binding upon the respective Lot Owners, their successors and assigns. In the event of any violation or threatened violation of any of the provisions of this Declaration, any person having an interest of record in any part of the Property shall be entitled forthwith to full and adequate relief by injunction and/or all such other available legal and equitable remedies from the consequences of any such violation. *All costs and expenses of any suit or proceeding shall be assessed against the defaulting party.*

(Emphasis added). It is undisputed that the parties' properties are subject to the Declaration and that both parties are "Lot Owners" under the terms of the agreement.

Oral argument on the motion was conducted November 18, 2005, but the Court did not rule immediately. On January 20, 2006, Defendants filed a Motion to File [Counterclaim][5] with the counterclaim attached. In the pleading, Defendants claimed that Plaintiffs had denied them proper access when Plaintiffs made improvements to their property. The counterclaim asserted that Defendants "may have an interest in the legal expenses associated with this proceeding." Plaintiffs opposed Defendants' counterclaim.

The parties ultimately resolved the substantive issues of the lawsuit and on January 30, 2006, the trial court entered an Agreed Judgment and Permanent Injunction, which permanently enjoined Defendants from expanding the building on their property.[6] As to Plaintiffs' attorney fees claim, the parties agreed as follows:

---

[5]Although Defendants' titled their motion "Motion to File Counter-Complaint," Tennessee Rule of Civil Procedure 13 defines such a pleading as a "counterclaim."

[6]As a result of the trial court's ruling, it is also now undisputed that Defendants are the "defaulting party," as contemplated by Paragraph 9 of the Declaration.

IT IS FURTHER ORDERED that should the Parties be unable to resolve through informal, non-binding mediation that portion of the dispute dealing with the interpretation of Paragraph Nine (9) of the Declaration, as it relates to the payment of Plaintiffs' attorneys' fees, costs and expenses incurred in connection with obtaining this Permanent Injunction, Plaintiffs may renew their motion for an award of such fees, costs and expenses.

After the parties failed to reach an agreement, on August 22, 2006, Plaintiffs renewed their motion for costs and expenses, requesting $3,913.75 in costs and expenses and a total of $117,334.50 in attorney fees. In their response to Plaintiffs' motion, Defendants again asserted that Plaintiffs were not entitled to recover attorney fees because the Declaration did not expressly provide for their recovery. Following a hearing on October 6, the trial court, by order entered on October 23, 2006, denied Plaintiffs' request for attorney fees, explaining that no authority presented supported a finding that the contractual language of Paragraph 9 created a right to recover attorney fees.

On appeal, the Court of Appeals affirmed the trial court's denial of attorney fees.[7] We granted Plaintiffs' application for permission to appeal to clarify the application of the American rule regarding attorney fees to the language in the Declaration.

**Analysis**

On appeal, Plaintiffs raise two related issues: (1) whether the contractual language "all costs and expenses of any suit or proceeding" creates a right to recover attorney fees; and (2) whether Defendants are judicially estopped from arguing that the contractual language does not include an award of attorney fees when one of Defendants' pleadings requested an award of attorney fees.

*Standard of Review*

The interpretation of a written agreement is a question of law and not of fact. Guiliano v. CLEO, Inc., 995 S.W.2d 88, 95 (Tenn. 1999). Accordingly, our review is de novo with no presumption of correctness accorded to the decisions of the courts below. Taylor v. Fezell, 158 S.W.3d 352, 357 (Tenn. 2005). Regarding factual findings, our review is also de novo upon the record of the trial court, but with a presumption of correctness. Tenn. R. App. P. 13(d); Cross v. City of Memphis, 20 S.W.3d 642, 643-45 (Tenn. 2000).

*"American Rule"*

Tennessee, like most jurisdictions,[8] adheres to the "American rule" for award of attorney fees. John Kohl & Co. v. Dearborn & Ewing, 977 S.W.2d 528, 534 (Tenn. 1998); Pullman Standard, Inc. v. Abex Corp., 693 S.W.2d 336, 338 (Tenn. 1985). Under the American rule, a party in a civil action

---

[7] Judge Clement filed a dissenting opinion.

[8] Alaska is the only state that does not follow the "American rule." Monzingo v. Alaska Air Group, Inc., 112 P.3d 655, 665 (Alaska 2005); see 1 Attorneys' Fees § 6:1 (3rd ed. 2008).

may recover attorney fees only if: (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case. Taylor, 158 S.W.3d at 359; John Kohl, 977 S.W.2d at 534. Tennessee's adherence to the American rule is based on several public policy considerations.

> First, since litigation is inherently uncertain, a party should not be penalized for merely bringing or defending a lawsuit. Second, the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included paying the fees of their opponent's lawyer. Third, requiring each party to be responsible for their own legal fees promotes settlement. Fourth, the time, expense, and difficulty inherent in litigating the appropriate amount of attorney's fees to award would add another layer to the litigation and burden the courts and the parties with ancillary proceedings. Thus, as a general principle, the American rule reflects the idea that public policy is best served by litigants bearing their own legal fees regardless of the outcome of the case.

House v. Estate of Edmondson, 245 S.W.3d 372, 377 (Tenn. 2008) (citations omitted).

In the context of contract interpretation, Tennessee allows an exception to the American rule only when a contract *specifically* or *expressly* provides for the recovery of attorney fees. Id. ("The American rule provides that a party in a civil action may not recover attorney's fees absent a *specific* contractual or statutory provision providing for attorney's fees . . . .") (emphasis added); Pullman Standard, 693 S.W.2d at 338 ("We continue to adhere to the rule in Tennessee that attorneys' fees are not recoverable in the absence of a statute or contract *specifically* providing for such recovery . . . .") (emphasis added); Pinney v. Tarpley, 686 S.W.2d 574, 581 (Tenn. Ct. App. 1984) ("In the absence of an *express* agreement to pay attorney's fees for enforcement of a contract, such are not recoverable in Tennessee.") (emphasis added). If a contract does not specifically or expressly provide for attorney fees, the recovery of fees is not authorized. See, e.g., Kultura, Inc. v. Southern Leasing Corp., 923 S.W.2d 536, 540 (Tenn. 1996) (holding that the term "any loss" does not include an award for attorney fees).

*"All Costs and Expenses"*

Plaintiffs, while acknowledging the general application of the American rule, argue that the contractual language "all costs and expenses of any suit or proceeding" is sufficient to justify an award of attorney fees in this case. In particular, Plaintiffs argue that by including the word "all" to describe the costs and expenses of litigation a defaulting party must pay, the parties to the contract intended[9] that the contractual language of Paragraph 9 encompasses attorney fees, which are a

---

[9]"The central tenet of contract construction is that the *intent* of the contracting parties at the time of executing the agreement should govern." Planters Gin Co. v. Fed. Compress & Warehouse Co., 78 S.W.3d 885, 890 (Tenn. 2002) (emphasis added). If the language is unambiguous, we look to the plain meaning of the contract's terms to ascertain the parties' intent. Id. at 889-90. If the contract is ambiguous, we use "parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract."

(continued...)

necessary "cost[] and expense[] of any suit or proceeding." To support this argument, Plaintiffs rely on this Court's discussion in Cobb v. Stewart, 463 S.W.2d 693, 695 (Tenn. 1971), which defined the word "all" "[a]s inclusive and embrac[ing] [every item it describes] unless excepted therefrom by descriptive words." Plaintiffs' reliance on the Cobb definition of "all," however, does not assist Plaintiffs in demonstrating that "all costs and expenses" specifically and expressly provides for attorney fees because "all" only describes "costs" and "expenses." The term "costs" has not generally been construed to encompass attorney fees. See Ranger Const. Co. v. Prince William County School Bd., 605 F.2d 1298, 1303 (4th Cir. 1979) (stating that "'costs' are quite different from and do not include 'attorney's fees'") (citing Nat'l Union Indem. Co. v. R. O. Davis, Inc., 393 F.2d 897, 900 (5th Cir. 1968)); Holcomb v. Cagle, 277 S.W.3d 393, 397 (Tenn. Ct. App. 2008) (app. for perm. app. denied) (holding that the contractual language to hold plaintiffs harmless from "any *cost*, loss, damage, or expense arising solely out of any failure of the Tenant to comply with any of the requirements or provisions of th[e] Ground Lease" did not explicitly provide for the recovery of attorney fees incurred in enforcing its provisions) (emphasis added); Marshall v. Sevier County, 639 S.W.2d 440, 443 (Tenn. Ct. App. 1982) (noting that "historically, the term 'cost' has not been interpreted to include attorney's fees").

The term "expenses," however, has been less frequently addressed. After reviewing the case law of this state and other jurisdictions, we take this opportunity to clarify that the term "expenses," without more, also does not include an award of attorney fees. See Holcomb, 277 S.W.3d at 397 (holding that the contractual language to hold plaintiffs harmless from "any cost, loss, damage, or *expense* arising solely out of any failure of the Tenant to comply with any of the requirements or provisions of th[e] Ground Lease" did not explicitly provide for the recovery of attorney fees incurred in enforcing its provisions) (emphasis added); Fiorito v. Goerig, 179 P.2d 316, 318 (Wash. 1947) ("The term 'costs' is synonymous with the term 'expense.' Costs are allowances to a party for the expense incurred in prosecuting or defending a suit, and the word 'costs' in the absence of statute or agreement does not include counsel fees; in other words, counsel fees are not costs or recoverable expenses incurred in prosecuting or defending a suit, either in suits in equity or actions at law.")

This Court has adhered strictly to the guiding principle that the American rule, prohibiting an award of attorney fees, will apply unless a contract specifically and expressly creates a right to recover "attorney fees" or some other recognized exception to the American rule is present. See, e.g., Pullman Standard, 693 S.W.2d at 338. The only way parties to a contract have been able to specifically and expressly create a right to recover attorney fees has been by incorporating the phrase "including reasonable attorney fees" or some other similar, yet equally specific, contractual language. Compare Brunswick Acceptance Co. v. MEJ, LLC, No. E2007-01819-COA-R3-CV, 2008 WL 4648350, at *7 (Tenn. Ct. App. Oct. 21, 2008) ( app. for perm. app. denied Apr. 27, 2009)

[9](...continued)

Allstate Ins. Co. v. Watson, 195 S.W.3d 609, 612 (Tenn. 2006) (citing Memphis Housing Auth. v. Thompson, 38 S.W.3d 504, 512 (Tenn. 2001)). Although we find in this case that the contractual language is unambiguous, had the opposite been true, the intent to be divined would be that of the original developer and the lot owners. There is no evidence in the record of the intent of the original developer in drafting Paragraph 9 of the Declaration.

(upholding an award of attorney fees where the contractual language provided for the recovery of "all costs and expenses, including reasonable attorney's fees, incurred in enforcing the agreement"), and ABC Painting Co. v. White Oaks Apartments of Hermitage, No. M2006-00280-COA-R3-CV, 2007 WL 14250, at *5 (Tenn. Ct. App. Jan. 2, 2007) (upholding an award of attorney fees where the contractual language provided for "all costs and expenses of any legal action . . . including but not limited to, reasonable attorney's fees"), with Kultura, 923 S.W.2d at 540 (holding that the term "any loss" does not include an award for attorney fees), and Holcomb, 277 S.W.3d at 397 (holding that the contractual language to hold plaintiffs harmless from "any cost, loss, damage, or expense arising solely out of any failure of the Tenant to comply with any of the requirements or provisions of th[e] Ground Lease" did not explicitly provide for the recovery of attorney fees incurred in enforcing its provisions).

Accordingly, if the parties intend to create contractually a right to recover attorney fees, the contractual language must specifically and expressly articulate this intent and not merely provide for recovery of "costs and expenses." Adhering to this bright-line rule provides certainty in contracting and is warranted by the public policy considerations supporting the American rule. See House, 245 S.W.3d at 377.

*Statutory Interpretation*

In addition to their reliance on the word "all" in the contractual language, Plaintiffs rely upon two Court of Appeals' decisions where the appellate court, interpreting statutory language not including a reference to fees, still concluded that the legislature intended for attorney fees to be recoverable.

In State ex rel. Burson v. Duromatic Prods. Corp., No. 01A01-9305-CH-00220, 1993 WL 545460, at *8 (Tenn. Ct. App. Dec. 30, 1993) (no app. for perm. app. filed), the Court of Appeals held that the statutory language "[d]amages may include any expenses incurred in investigating and enforcing this part," found in the Tennessee Water Quality Control Act, Tenn. Code Ann. § 69-3-116(c) (1987), created a right to recover "the expense of attorney's fees." The Court of Appeals' decision included no analysis of precedent, legislative history, or other legal authority to support this conclusion. See id. Since no application for permission to appeal was filed, this Court had no opportunity to review this decision. We disagree with its conclusion and as a result, we decline to apply the Court of Appeals' construction of Tennessee Code Annotated section 69-3-116(c) to the contractual language at issue in this case.

Plaintiffs also rely upon a series[10] of cases involving Tennessee Code Annotated section 8-20-101 to -107. Under these Code sections, the Court of Appeals has held that trial courts have the discretion "to tax an attorney fee as part of the costs or (more rationally) to declare an attorney's fee to be a proper expense of the office of the official involved to be paid as part of the expense of such office."[11] Cunningham v. Moore County, 604 S.W.2d 866, 869 (Tenn. Ct. App. 1980); see Jenkins v. Armstrong, 211 S.W.2d 908, 910 (Tenn Ct. App. 1947); Patterson v. Wharton, No. W2005-02494-COA-R3-CV, 2006 WL 1237266, at *2 (Tenn. Ct. App. May 10, 2006) (no app. for perm. app. filed). In reviewing Patterson, Cunningham, and Jenkins, we find that these cases are distinguishable from the one presently before the Court.

Pursuant to sections 8-20-101 to -107 (2002), when a county clerk is unable to "properly and efficiently conduct the affairs and transact the business of such person's office . . . , such person may employ such deputies or assistants as may be actually necessary to the proper conducting of such person's office." Tenn. Code Ann. § 8-20-101(a). In order to hire new deputies and assistants, the county clerk must make an application to the county judge "setting forth the facts showing the necessity for a deputy or deputies or assistants, the number required and setting forth the salary that should be paid each." Id. § 8-20-101(a)(1). If the county clerk's application is denied, the clerk must file a petition with the chancery court, naming the county executive as the party defendant. Id. § 8-20-102. After considering the application, the court "may allow or disallow the application, either in whole or in part." Id. Additionally, "[t]he cost of all cases [brought pursuant to this section] shall be paid out of the fees of the office collected by such officers, and they and each of them shall be allowed a *credit* for the same in settlement with the county trustee." Id. § 8-20-107 (emphasis added).

In Jenkins, the trial court, applying section 8-20-107,[12] instructed that an attorney fee of $125 be paid "out of the fees of the office of [the county clerk] and that she have credit therefor in her settlement with the County Trustee." 211 S.W.2d at 910. In reviewing the trial court's discretion to award attorney fees, the Court of Appeals reasoned:

---

[10] In their brief, Plaintiffs cite to Patterson v. Wharton, No. 2005-02494-COA-R3-CV, 2006 WL 1237266 (Tenn. Ct. App. May 10, 2006) (no app. for perm. app. filed), for the proposition that the Court of Appeals has interpreted a statute to include an award of attorney fees even though the words "attorney fees" are not specifically included in the statutory language. The issue of whether an award of attorney fees is appropriate, however, was not the issue in that case. Instead, the sole issue was the amount of fees awarded. For this reason, this Court finds it necessary to discuss Jenkins v. Armstrong, 211 S.W.2d 908 (Tenn. Ct. App. 1947), and Cunningham v. Moore County, 604 S.W.2d 866 (Tenn. Ct. App. 1980). In these two cases, the Court of Appeals explained the reasoning in support of the conclusion that a credit equal to the amount of attorney fees incurred may be awarded pursuant to Tennessee Code Annotated section 8-20-107.

[11] Importantly, we note that section 8-20-107 is not a fee shifting provision as the statute does not transfer payment of fees to the losing party per se.

[12] This section was previously codified at Tennessee Code 1932, section 10733.

-8-

While the filing of such petition and the prosecution thereof toward the relief sought is certainly for the benefit of petitioner and her relief, it is also, when filed in a proper case, as contemplated by the statutes, for the benefit of the office and its proper administration. In this, as well as in the funds affected, the defendant County Judge, and his constituents, the people of the County, have a real and continuing interest. It is certainly a necessary expense or "cost"; for none could contend that the petitioner could properly file and prosecute toward the relief sought, without the employment of legal assistance. Thus, considered, it has even broader application than the usual administrative and trust funds in which a common interest of litigants exists, and where such authority of the Chancellor is unquestioned. It becomes an expense or "cost" of a proper administration of the office.

Id.

We find the reasoning applied by the Jenkins[13] court analogous to the common fund doctrine, an exception to the American rule. "The common fund doctrine provides that attorney's fees may be awarded when the efforts of a litigant succeeds [sic] in 'securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common.'" House, 245 S.W.2d at 377 (quoting Travelers Ins. Co. v. Williams, 541 S.W.2d 587, 589 (Tenn. 1976)). As noted by the Court of Appeals in Marshall, 639 S.W.2d at 444:

[P]roceedings brought pursuant to §§ 8-20-101, et seq., involve administering and conserving funds held as a public trust and T.C.A., § 8-20-107 provides for payments from such fund. [Cases addressing T.C.A., § 8-20-107] fall within the well recognized exception to the rule that attorney's fees are not taxable as costs except where the attorney's fees are incurred to preserve or administer a fund which is brought before the court.

Under T.C.A., §§ 8-20-101, et seq., the official sues for additional aid in performing the duties he is legally bound to perform. By a more efficient operation and performance of the duties of the office, the fund from which the costs are paid will be preserved and enhanced.

(Citations omitted). Given that the fee payment provision created by section 8-20-107 is similar to the common fund doctrine, which is a clear exception to the American rule, we do not find that these cases lend any support to Plaintiffs' argument that "all costs and expenses" specifically provides for an award of attorney fees.

---

[13]Neither Patterson nor Cunningham involves the issue of whether the named defendant could be liable for the plaintiff's attorney fees if plaintiff's claim was successful. Instead, the issues in these cases were directed at the amount of fees owed, Patterson, 2006 WL 1237266, at *3, and whether the trial court abused its discretion in denying attorney fees when the plaintiff's claim was unsuccessful, Cunningham, 604 S.W.2d at 869.

Most Tennessee cases construing statutes providing for payment of costs and expenses to the prevailing party have specifically denied the award of attorney fees where no provision for attorney fees was specifically or expressly included in the statutory language. See, e.g., Kultura, 923 S.W.2d at 540 (noting that "any loss" as used in Tennessee Code Annotated section 47-9-404(1) (1992) does not specifically include attorney fees and as such, "the allowance of attorney's fees is not authorized"); Weaver v. McCarter, No. W2004-02803-COA-R3-CV, 2006 WL 1529506, at *14 (Tenn. Ct. App. June 6, 2006) ("After reviewing the [Tennessee Real Estate Broker License Act of 1973], we find no provision allowing for an award of attorney's fees due to a breach of the duties set forth under sections 62-13-403 or 62-13-404 [(Supp. 2005)]."); Mitchell v. Mitchell, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, at *5 (Tenn. Ct. App. June 27, 2005) (holding that the child relocation statute, Tenn. Code Ann. § 36-6-108, "contains no provision for the recovery of attorney fees"); Pickern v. Pickern, No. E2004-02038-COA-R3-CV, 2005 WL 711964, at *7 (Tenn. Ct. App. Mar. 29, 2005) ("Upon review of the Uniform Interstate Family Support Act, we find no basis upon which to award attorney's fees for the enrollment of a foreign judgment . . . .").

Only where statutes specifically define costs or expenses to include fees have courts generally awarded such fees. See, e.g., Miller v. United Automax, 166 S.W.3d 692, 697 (Tenn. 2005) (noting that Tennessee Code Annotated section 47-18-109(e)(1), which provides in pertinent part that "[u]pon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action *reasonable* attorney's fees and costs," allows for attorney fees) (emphasis added); Carson Creek Vacation Resorts, Inc. v. State, 865 S.W.2d 1, 2 (Tenn. 1993) (holding that Tennessee Code Annotated section 67-1-1803(d), which states that "[t]he court shall award to the prevailing party *reasonable attorneys' fees* and expenses of litigation," makes an award of attorney fees mandatory) (emphasis added).[14]  Thus, statutory construction has been consistent with contract construction in requiring a clear intent to allow attorney fees to a prevailing party before such fees may be awarded.

*Estoppel*

Plaintiffs argue in the alternative that Defendants are judicially estopped from asserting that Paragraph 9 of the Declaration does not create a contractual right to attorney fees.  Plaintiffs' argument is based on the fact that, after a hearing on Plaintiffs' request for attorney fees but before the trial court ruled on the issue, Defendants filed a Motion to File [Counterclaim], stating that they "may also have an interest in recovering the legal expenses associated with this proceeding."  Upon review of the record, we find that the doctrine of judicial estoppel has no application in this case.

---

[14]Additionally, this Court did not locate any Tennessee case where attorney fees were awarded in the absence of a contract provision explicitly referencing attorney fees. See, e.g., Taylor, 158 S.W.3d at 360 (allowing for the recovery of attorney fees where a marital dissolution agreement provided for "all reasonable attorney's fees and suit expenses"); ABC Painting, 2007 WL 14250, at *5 (upholding an award of attorney fees where the contractual language provided for "all costs and expenses of any legal action . . . including but not limited to, reasonable attorney's fees"); Segneri v. Miller, M2003-01014-COA-R3-CV, 2004 WL 2357996, at *6-7 (Tenn. Ct. App. Oct. 19, 2004) (awarding attorney fees where a lease agreement provided that Lessee "pay all costs incurred therefor or in connection therewith, including but not limited to reasonable attorney's fees").

This Court has explained the doctrine of judicial estoppel this way:

> The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, on broad grounds of public policy, to uphold the *sanctity of an oath*. The *sworn statement* is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth. It is not merely an admission, but an absolute bar.

Marcus v. Marcus, 993 S.W.2d 596, 602 (Tenn. 1999) (emphases added) (quoting Sartain v. Dixie Coal & Iron Co., 266 S.W. 313, 318 (Tenn. 1924)). While the doctrine of judicial estoppel is applied to prohibit a party from taking "a position that is directly contrary to or inconsistent with a position previously taken by the party," Guzman v. Alvares, 205 S.W.3d 375, 382 (Tenn. 2006), the doctrine generally only applies to "sworn statements made in the course of judicial proceedings." Sartain, 266 S.W. at 316; accord Carvell v. Bottoms, 900 S.W.2d 23, 30 (Tenn. 1995) (noting that "parties are 'judicially estopped' from taking contrary sworn positions on the same issue in different lawsuits"); Layhew v. Dixon, 527 S.W.2d 739, 741 (Tenn. 1975) (noting that "judicial estoppels are not favored and ordinarily do not arise out of mere unsworn pleadings").

While our appellate courts most often have applied the doctrine of judicial estoppel only to prevent a party from attempting to contradict by oath a statement of fact previously made under oath, see id.; Werne v. Sanderson, 954 S.W.2d 742, 745 (Tenn. Ct. App. 1997) (noting that "in order for the judicial estoppel to apply, the party against whom the estoppel is urged must have made a statement of fact under oath that he or she later seeks to contradict"), both this Court and the Court of Appeals have sometimes applied the doctrine where no oath was involved. E.g., Nashville Trust Co. v. Lebeck, 270 S.W.2d 470, 479 (Tenn. 1954) (noting that "'[w]hile the law of judicial estoppel is ordinarily applied to one who has made oath to a state of facts in a former judicial proceeding which in a later proceeding he undertakes to contradict, yet it is frequently applied, where no oath is involved, to one who undertakes to maintain inconsistent positions in a judicial proceeding'") (quoting Stearns Coal & Lumber Co. v. Jamestown R. Co., 208 S.W. 334, 334 (Tenn. 1919)). This inconsistent application of the doctrine of judicial estoppel is illustrated, for example, by the Court of Appeals' most recent discussion of the issue:

> There are two distinct branches of judicial estoppel: estoppel by oath and estoppel by inconsistent position. The first branch is designed to "uphold the sanctity of an oath." "The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth." The second branch[, in which no oath is required,] is "founded on the administration of justice and seek[s] to prevent litigants from unfairly benefitting from a strategic shift in legal position." Both branches of judicial estoppel aim to prevent parties from "play[ing] fast-and-loose with the courts."

Johnson v. Lenoir City Housing Auth., No. E2006-02774-COA-R3-CV, 2008 WL 836364, at *7 (Tenn. Ct. App. Mar. 31, 2008) (no app. for perm. app. filed) (citations omitted).

Although this Court agrees that a party may be estopped from contradicting a sworn statement previously made or from gaining an unfair advantage by taking inconsistent positions in a legal proceeding, we do not agree with the Court of Appeals' conclusion that the doctrine of judicial estoppel should be applied in both instances. Instead, we take this opportunity to clarify that the doctrine of *judicial* estoppel is applicable only when a party has attempted to contradict by oath a sworn statement previously made. See Allen v. Neal, 396 S.W.2d 344, 346 (Tenn. 1965) (noting that "[j]udicial estoppels arise from sworn statements made in the course of judicial proceedings, generally in a former litigation, and are based on public policy upholding the sanctity of an oath and not on prejudice to adverse party by reason thereof, as in the case of equitable estoppel"). In those instances where no oath is involved but the party is attempting to gain an unfair advantage by maintaining inconsistent legal positions, the doctrine of *equitable* estoppel should be applied.

In the present case, Plaintiffs argue that Defendants' statement in their Motion to File [Counterclaim] that they "may have an interest in the legal fees associated with this proceeding as a direct result of having to assert their rights to retain the full enjoyment of the Property as specified in the Declaration" and Defendants' actual unsworn request in their counterclaim for "costs and expenses, including attorney fees," warrants application of judicial estoppel principles. Plaintiffs' argument fails, however, because no oath was required or included in Defendants' pleadings. Carvell v. Bottoms, 900 S.W.2d at 30 (noting that "parties are 'judicially estopped' from taking contrary sworn positions"); Sartain, 266 S.W. at 316. In the absence of a sworn statement, the doctrine of judicial estoppel does not apply.

Even if Plaintiffs had alleged that Defendants should be equitably estopped from asserting that Paragraph 9 does not provide for attorney fees, their argument still fails.

> The essential elements of an equitable estoppel as related to the party estopped are said to be[:] (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; [and] (3) Knowledge, actual or constructive[,] of the real facts.

Werne, 954 S.W.2d at 745. Applying these elements in this case, we first note that Defendants' assertion in their Motion to File [Counterclaim] that they "may have an interest in the legal fees" does not amount to "a false representation or concealment of material fact." Instead, Defendants' assertion was merely in compliance with the Tennessee Rules of Civil Procedure, which require parties to set forth all possible claims and defenses in any new pleading and which specifically allow for inconsistent pleading. Tenn. R. Civ. P. 8.05; Barnes v. Barnes, 193 S.W.3d 495, 501 (Tenn. 2006). Defendants did not assert that they were requesting attorney fees pursuant to Paragraph 9. Instead, Defendants merely positioned themselves to argue for attorney fees in the event Plaintiffs prevailed in their position on attorney fees, and Defendants were subsequently successful in their counterclaim. Second, at no time did Defendants abandon their argument that attorney fees were not

-12-

contemplated under Paragraph 9, and as such, Defendants have not taken inconsistent positions on the issue of attorney fees. Third, Plaintiffs have failed to allege how they were prejudiced by Defendants' assertion in their Motion to File [Counterclaim] and no prejudice has been shown. <u>Ryan v. Lumbermen's Mut. Cas. Co.</u>, 485 S.W.2d 548, 550 (Tenn. 1972) (noting that "the party to whom [the false misrepresentation or concealment] was made must have relied on or acted on it to his prejudice") (quoting 31 C.J.S. Estoppel § 67 at 402); <u>Sartain</u>, 266 S.W. at 317 (noting that the doctrine of equitable estoppel "can only be invoked generally by persons who have been prejudiced") (quoting <u>Southern Coal & Iron Co. v. Schwoon</u>, 239 S.W. 398, 409 (Tenn. 1921)). Accordingly, the doctrine of equitable estoppel also does not apply in this case.

## Conclusion

For the reasons stated above, Plaintiffs are not entitled to recover attorney fees in this action. The judgment of the Court of Appeals is affirmed. Costs of this appeal are taxed to Cracker Barrel Old Country Store, Inc., and Cracker Barrel Associates, LLC, and their sureties, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE