IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 16, 2012 Session

## IN RE BABY

**Appeal from the Juvenile Court for Davidson County**
**No. 20116298PT150334      Betty K. Adams Green, Judge**

---

**No. M2012-01040-COA-R3-JV - Filed January 22, 2013**

---

This case involves the status of the parties with respect to a baby conceived pursuant to a surrogacy agreement. The juvenile court determined that there was a valid surrogacy agreement and denied the surrogate's requests for relief from a final order ratifying the surrogacy agreement. We affirm the decision of the juvenile court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Shelley S. Breeding and Allison James Starnes-Anglea, Knoxville, Tennessee, for the appellants, J.J.E. and J.J.M.

Benjamin Papa and Kim Huguley, Brentwood, Tennessee, for the appellees, L.G. and A.T.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

In July 2010, Luca G. and Antonella T. ("Intended Father" and "Intended Mother," respectively), entered into a surrogacy agreement with Jennifer E. ("Surrogate") and Joshua M. ("Surrogate's Husband"). The agreement states that Intended Father and Intended Mother "are adult individuals over the age of twenty-one in a committed, loving, and stable relationship with one another" and that they desired to enter into the surrogacy agreement "in order to have one or more children that are biologically related to one of them, and to take these children into their home and raise them as their parents." The agreement further provides that "[n]either the Surrogate nor the Surrogate's husband desires to have a parental relationship with any child born pursuant to the Agreement." The surrogacy agreement

includes the following provisions:

> All parties acknowledge that legal issues surrounding surrogacy are an unsettled area of law in the state of Tennessee. All parties acknowledge that statutes regarding domestic relations and court opinions in the area of domestic relations create certain presumptions and assumptions that are not appropriate in this matter, including but not limited to:
>
> a. The woman who gives birth to the child is the child's "mother."
> b. The woman who gives birth to a child is obligated to rear and support the child, along with her husband, if she is married.
> c. The right to parent and raise a child lies with the woman who gave birth to the child and her husband, if she is married.
>
> The parties acknowledge that these and other presumptions and assumptions of the law arise from cases and statutes that do not relate to pregnancies that result from surrogacy arrangements. The parties, individually and jointly, desire that any disputes that arise from or in connection with this Agreement, or that arise from any aspect of their relationship be resolved by application of the terms of this Agreement and the intentions of the parties as expressed in this document.

In the surrogacy agreement, Surrogate and her husband agreed not to "attempt to form any parent-child bond with" any child born pursuant to the agreement and to cooperate with all legal efforts to "secure legal recognition of the Intended Parents' parent-child relationships with the child or children the Surrogate will deliver pursuant to this Agreement." The intended parents were to "take physical custody of the child or children immediately upon birth," and their names were to be placed upon the child or children's birth certificate as the parents.

Surrogate subsequently became pregnant as a result of artificial insemination with the sperm of Intended Father. In November 2011, prior to the baby's birth, Intended Father, Intended Mother, Surrogate, and Surrogate's Husband filed a joint petition in juvenile court to declare parentage and ratify the surrogacy agreement. On December 22, 2011, the juvenile court entered a final order to declare parentage, ratify the surrogacy agreement, and direct the issuance of birth certificate. After making detailed factual findings, the court ordered as follows:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that any rights and responsibilities that [Surrogate and Surrogate's Husband] might

theoretically claim with regard to the Child, if any, are forever terminated.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Intended Father] is the legal father of Unborn Baby to be born on or about January 9, 2012; that the legal relationship of parent and child is established and recognized between him and the Child immediately upon birth, and the Child is the lawful child of [Intended Father].

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Intended Father and Intended Mother] shall have full legal and physical custody of the Child immediately upon birth.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Intended Father] shall have full legal authority to act on behalf of the Child from birth with full rights over the Child, including but not limited to consenting to necessary medical treatment, as well as the right to inheritance.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the midwife who delivers the child (or any hospital that the Surrogate may deliver in an emergency) shall place [Intended Father's] name on the Child's birth certificate as the father of the child. For the sole purpose of completing the birth certificate for the State's record-keeping purposes, [Surrogate's] name should be included on the birth certificate as the mother.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the State of Tennessee, Office of Vital Records, issue a birth certificate for the Child to reflect the child's name at birth as a name selected by [Intended Father and Intended Mother] and shall place [Intended Father's] name on the Child's birth certificate as the father of the child and that the mother's name be listed as [Surrogate].

All of the parties approved this order for entry.

The child was born on January 7, 2012, and the parties agreed that it would be in the child's best interest for Surrogate to nurse the child for a few days. On January 13, 2012, Surrogate filed a motion for ex parte restraining order and an injunction prohibiting the child from international travel and for surrender of the child's passport. (Intended Father and Intended Mother reside in Italy.) The juvenile court denied Surrogate's motion and ordered that physical custody of the child be given to Intended Father.

On January 13, 2012, Surrogate also filed a motion to alter or amend the juvenile court's December 22, 2011 order ratifying the surrogacy agreement. On January 27, 2012, Surrogate filed a motion for relief from the final judgment. In both motions, Surrogate argued that there was no "surrogate birth" under the Tennessee surrogacy statutes because the intended parents were not married. (The intended parents married on January 27, 2012.) Surrogate's motions were initially heard by a magistrate, who entered an order on February 27, 2012 denying Surrogate's motions. Surrogate appealed to the juvenile court judge. After a hearing, the juvenile court judge entered a detailed order affirming the magistrate's decision in all respects. The court summarized its decision as follows:

> [T]he court finds that there was a valid surrogacy agreement entered into with full knowledge of all relevant facts by the parties. The parties acted upon this agreement in good faith until shortly after the birth of the child. The Surrogate received well over $30,000 in reiumbursement under the agreement. She carried the child to term pursuant to the agreement. At this point, she wishes to change her mind. She knew what the surrogacy agreement required. She, only weeks prior to the child's birth[,] co-petitioned the court to ratify the agreement. Based on the foregoing, the Court finds that her request to Alter or Amend the Order is hereby denied and the Magistrate's Order is affirmed in all respects.

On appeal, Surrogate raises the following issues:

1. Whether the trial court had subject matter jurisdiction to uphold the surrogacy agreement.

2. Whether the trial court erred in enforcing the surrogacy agreement because the intended parents did not comply with the definition of surrogate birth in Tenn. Code Ann. § 36-6-102(48).

3. Whether the trial court erred in terminating Surrogate's parental rights when Surrogate did not have counsel and the court lacked proper statutory authority.

4. Whether the trial court erred in upholding the surrogacy agreement and failing to perform a best interests analysis.

STANDARD OF REVIEW

This appeal is from the trial court order denying Surrogate's motion to alter or amend

-4-

the judgment, pursuant to Tenn. R. Civ. P. 59,[1] and her motion for relief from the judgment, pursuant to Tenn. R. Civ. P. 60.[2] We review a trial court's denial of a Rule 59 motion or a Rule 60 motion under an abuse of discretion standard. *J & B Invs., LLC v. Surti*, 258 S.W.3d 127, 132 (Tenn. Ct. App. 2007); *Chambliss v. Stohler*, 124 S.W.3d 116, 120 (Tenn. Ct. App. 2003). An abuse of discretion occurs "only when [the trial court] 'applie[s] an incorrect legal standard, or reach[es] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). Under this standard, we are required to uphold the ruling "as long as reasonable minds could disagree about its correctness." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007). Furthermore, "we are not permitted to substitute our judgment for that of the trial court." *Id.* Thus, under the abuse of discretion standard, we give great deference to the trial court's decision. *See Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003).

ANALYSIS

*Subject matter jurisdiction*

This matter involves the unusual circumstance of a surrogate birth. The following statutory definition of "surrogate birth" describes the situation at issue here: "The insemination of a woman by the sperm of a man under a contract by which the parties state their intent that the woman who carries the fetus shall relinquish the child to the biological

---

[1]Motions to alter or amend a judgment pursuant to Tenn. R. Civ. P. 59 may be granted "(1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice." *Whalum v. Marshall*, 224 S.W.3d 169, 175 (Tenn. Ct. App. 2006) (quoting *Bradley v. McLeod*, 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)).

[2]Litigants may seek relief from a final judgment pursuant to Tenn. R. Civ. P. 60.02 for the following reasons:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud . . . , misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment.

Tenn. R. Civ. P. 60.02.

father and the biological father's wife to parent[.]"[3] Tenn. Code Ann. § 36-1-102(48)(A)(ii). The statutory provisions regarding surrogate birth go on to provide as follows:

> (B) No surrender pursuant to this part is necessary to terminate any parental rights of the woman who carried the child to term under the circumstances described in this subdivision (48) and no adoption of the child by the biological parent(s) is necessary;
>
> (C) Nothing in this subdivision (48) shall be construed to expressly authorize the surrogate birth process in Tennessee unless otherwise approved by the courts or the general assembly.

Tenn. Code Ann. § 36-1-102(48)(B)-(C).

Subsection (48)(C) of Tenn. Code Ann. § 36-1-102 is a curious provision by which the General Assembly "kicked the can down the road" by leaving it to a later general assembly or the courts to authorize surrogacy birth contracts. We can find no subsequent statute addressing surrogacy birth contracts, and the parties have not directed us to any. Tenn. Code Ann. § 36-1-102(48)(A) expressly defines such contracts and does not make them illegal. Rather, the statute "reflects a neutral legislative stance as to the validity and enforceability of surrogacy arrangements." *In re C.K.G.*, 173 S.W.3d 714, 723 n.6 (Tenn. 2005). This is a subject better left to the legislature and we, therefore, decline to find such agreements to be against public policy. Because such contracts violate no law, we will enforce them until the legislature instructs otherwise.

The next question is, "Where are such agreements to be enforced?" Surrogate insists that the juvenile court did not have jurisdiction to approve the surrogacy agreement. We begin by noting that the definition of "surrogate birth" is found in the adoption statutes, and the application of the definition is limited to "this part," meaning title 36, chapter 1, part 1. Tenn. Code Ann. § 36-1-102. Although no adoption is required by the biological parent, the adoption exception in Tenn. Code Ann. § 36-1-102(48)(B) does not include the non-biological parent; thus, a non-biological intended parent must adopt the child in order to obtain parental rights.[4] The juvenile court has jurisdiction over adoption proceedings, and

---

[3]This definition describes what is often called "traditional surrogacy." *In re C.K.G.*, 173 S.W.3d 714, 720 (Tenn. 2005). The previous subsection, Tenn. Code Ann. § 36-1-102(48)(A)(i), describes what is called "gestational surrogacy." *Id.*

[4]In the surrogacy agreement in this case, Surrogate and her husband agreed to "cooperate in all legal efforts to secure legal recognition of the parent-child relationship between the Intended Parents and the
(continued...)

-6-

we believe a juvenile court would have jurisdiction to confirm a surrogacy agreement as a prelude to adoption. Furthermore, we note that, in an attempt to block an adoption by the non-biological parent, the biological mother might argue that the surrogacy agreement is not valid. Consequently, we believe that the juvenile court would also have jurisdiction over proceedings to invalidate a surrogacy agreement.

We find unpersuasive Surrogate's reliance upon language in our Supreme Court's decision in *In re C.K.G.*, 173 S.W.3d at 722, to support the general proposition that surrogacy cases fall outside the adoption statutes. In *In re C.K.G.*, eggs that were donated anonymously were fertilized and then implanted in the gestational mother. *Id.* at 716. The father of the resulting triplets sought custody of the children, arguing that the gestational mother was not the children's legal mother. *Id.* Based upon the adoption statutes' definition of biological parents, the Court concluded that the adoption statutes did not "expressly control the circumstances of this case." *Id.* at 723. The Court decided that the gestational mother was the legal mother, but expressly qualified its holding by noting that the case did not involve "a controversy between a traditional or gestational surrogate and a genetically-unrelated intended mother." *Id.* at 717.

*Surrogacy agreement*

Surrogate asserts that the trial court abused its discretion in enforcing the surrogacy agreement because Intended Mother was not married to Intended Father as contemplated by the statutory definition of surrogate birth. Surrogate's argument is rooted in the language of the applicable statutory definition of surrogate birth: "The insemination of a woman by the sperm of a man under a contract by which the parties state their intent that the woman who carries the fetus *shall relinquish the child to the biological father and the biological father's wife to parent*." Tenn. Code Ann. § 36-1-102(48)(A)(ii) (emphasis added). Because Intended Mother and Intended Father were not married at the time when the parties entered into the surrogacy contract, Surrogate asserts that the contract violates Tenn. Code Ann. § 36-1-102(48)(A)(ii) and, therefore, the trial court erred in enforcing the contract. We cannot agree.

Under the facts of this case, we find no abuse of discretion in the trial court's decision to deny Surrogate's Rule 60 motion for relief from the final order approving the surrogacy agreement. We recognize that, in construing a statute, we are to "ascertain and carry out the legislature's intent without unduly restricting or expanding a statute's coverage beyond its

---

[4](...continued)

child," and Intended Parents agreed "to take all necessary steps to finalize the legal recognition of the parent-child relationship between them and the child."

intended scope." *In re C.K.G.*, 173 S.W.3d at 721 (quoting *Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.*, 978 S.W.2d 91, 93 (Tenn. 1998)). In this regard, we agree with the trial court's reasoning:

> It would be absurd to adopt the position that this was not a surrogate birth because the Intended Parents were married 20 days after the birth of the child. The obvious intent is for the child to be raised in a stable, loving home by committed parents. That is exactly what was intended and what is before this court. The United States Supreme Court in *Green v. Bock Laundry Machine Co.*, 409 U.S. 504 (1989)[,] made it abundantly clear that all statutes should be interpreted with the premise that our legislature did not intend on absurd or manifestly unjust results. The Court agrees with counsel that "to have the child's entire destiny hinging on the timing of her parents' marriage is absurd."

As the trial court also discussed, Surrogate knew the marital status of the intended parents when she signed the surrogacy agreement. For over a year, the parties acted in reliance on the surrogacy agreement, and Surrogate accepted considerable amounts of money from the intended parents. The parties jointly petitioned the trial court for approval of their agreement, and the order entered by the trial court was approved by all of the parties. Moreover, Intended Mother and Intended Father married within a few weeks of the child's birth.[5] Surrogate's last-minute change of heart does not provide a reason to invalidate the final judgment approving the surrogacy contract.

*Legal counsel*

Surrogate asserts that the trial court erred in terminating her parental rights when she did not have legal representation. We disagree with this reasoning.

Surrogate's basic argument here is that, because the intended parents were not married when the parties entered into the surrogacy contract, the contract does not satisfy the statutory requirements of Tenn. Code Ann. § 36-1-102(48)(A)(ii) and, therefore, Surrogate's parental rights had to be terminated and she should have had counsel to represent her. In the previous section, we rejected the premise of Surrogate's argument by finding that the trial court did not abuse its discretion in concluding that the surrogacy contract was valid under the statute. Because the surrogacy contract fits within the definition of Tenn. Code Ann. § 36-1-102(48)(A)(ii), the statute provides that no surrender is required to terminate Surrogate's

---

[5]Intended Mother and Intended Father were delaying their marriage for religious reasons–to allow Intended Mother to obtain an annulment of a previous marriage. When the present controversy arose, however, they decided to go ahead with the marriage immediately.

parental rights. Tenn. Code Ann. § 36-1-102(48)(B). In her brief, Surrogate concedes that "if the Surrogacy Agreement was executed as Tennessee Code Annotated § 36-1-102(48) *et seq.* specifically states then [Surrogate's] parental rights were properly terminated."

Surrogate willingly signed a valid surrogacy contract in which she stated her intent not to have a parental relationship with the child and to take whatever actions were necessary to make Intended Father and Intended Mother the child's legal parents. Surrogate was represented by counsel at the time when she entered into the surrogacy agreement. We find no merit to this argument.

*Best interests*

Surrogate's argument that the trial court erred in failing to perform a best interest analysis must also fail. Surrogate argues that the surrogacy agreement was invalid and that the trial court erred in failing to apply the best interests standard as set forth at Tenn. Code Ann. § 36-6-106.

Surrogate relies on cases from other jurisdictions to support her assertion that the surrogacy agreement violates public policy. As discussed above, however, because surrogacy contracts violate no Tennessee law and have been recognized by the legislature in the adoption statutes, we will enforce them until the legislature instructs otherwise. Under Tenn. Code Ann. § 36-1-102(48), there is no best interest analysis if there is a valid surrogacy contract because the surrogate has already given up her parental rights. This is not a custody dispute, and the provisions of Tenn. Code Ann. § 36-6-106 do not apply.

*Attorney fees on appeal*

The intended parents request that this court award them their attorney fees on appeal. Tennessee abides by the "American rule" regarding the payment of attorney fees. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). Thus, for a court to award attorney fees, there must be statutory authority or a contractual agreement. *Id.* Otherwise, each party to a lawsuit bears the expense of his or her own attorney fees. *Id.* at 309. In interpreting contracts, Tennessee law allows for an exception to the American rule "only when a contract *specifically* or *expressly* provides for the recovery of attorney fees." *Id.*

In this case, the surrogacy agreement includes several provisions that address a party's entitlement to attorney fees in specific circumstances. Section 21 addresses the situation where the child is determined not to be biologically related to Intended Father. The final provision of this section states as follows:

If the testing establishes within a high degree of scientific certainty that any man other than [Intended Father] is the genetic father of the child or children, this Agreement shall be deemed breached by Surrogate and the Intended Parents shall be permitted to:

(a) recovery of all fees and expenses paid to the Surrogate or on her behalf including any pending expenses the Intended Parents would otherwise be obligated to pay under the terms of this Agreement; and

(b) reasonable attorney's fees and costs of the Intended Parents for bringing any breach of contract action that they may decide to bring to enforce the terms of this Agreement.

Similarly, there are attorney fee provisions in sections 38 and 39 of the agreement, regarding involuntary and voluntary termination of Surrogate's pregnancy, giving the Surrogate or the Intended Parents the right to recover reasonable attorney fees and costs associated with bringing an action for breach of contract.

Toward the end of the surrogacy agreement, section 48 generally addresses damages for breach of contract. That section provides that "any breach of this contract shall subject them [the parties] to a claim for monetary damages." There is no reference to or mention of attorney fees. Because the surrogacy agreement does not expressly provide for recovery of attorney fees outside of certain limited situations not applicable here, we deny the intended parents' request for attorney fees on appeal.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs of appeal are assessed against the appellants.

_____

ANDY D. BENNETT, JUDGE