IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 15, 2014 Session

# RAINES BROTHERS, INC. v. H. MICHAEL CHITWOOD ET AL.

**Appeal from the Circuit Court for Hamilton County**
**No. 11C286     Jacqueline S. Bolton, Judge**

_____

**No. E2013-02232-COA-R3-CV - Filed July 3, 2014**

_____

This contract action stems from the defendant's, H. Michael Chitwood's, failure to pay for construction work that was performed by the plaintiff, Raines Brothers, Inc. ("Raines"). The work was performed on a home that was occupied by Mr. Chitwood but owned by a trustee, James Dreaden, who was also named as a defendant. Following a bench trial, the trial court awarded Raines a judgment against Mr. Chitwood and Mr. Dreaden (collectively "Defendants") in the amount of $66,762.71. The trial court also awarded pre-judgment interest at the rate of eighteen percent per annum, beginning August 14, 2007. The trial court denied Raines's claim for attorney's fees. Defendants timely appealed the trial court's ruling. Having determined that Raines adequately proved its entitlement to this amount pursuant to the parties' contract, we affirm the trial court's judgment of $66,762.71 against Mr. Chitwood. We reverse the trial court's judgment against Mr. Dreaden. We modify the trial court's award of the rate of interest from eighteen percent per annum to ten percent in accordance with relevant statutory and case law. We also reverse the trial court's denial of Raines's claim for attorney's fees pursuant to the parties' contract and remand for a determination of the proper amount of interest to be charged, as well as a reasonable award of attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Reversed in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and D. MICHAEL SWINEY, J., joined.

R. Wayne Peters and Gary L. Henry, Chattanooga, Tennessee, for the appellants, H. Michael Chitwood and James S. Dreaden.

Sheri A. Fox and Marcie Kiggans Bradley, Chattanooga, Tennessee, for the appellee, Raines Brothers, Inc.

**OPINION**

I.  Factual and Procedural Background

On July 31, 2006, Mr. Chitwood signed a written agreement with Raines to have construction work performed on his home.  The contract constituted a "cost plus" agreement, providing that Mr. Chitwood would pay the cost of the work plus a fee of ten percent. Although Mr. Dreaden as trustee is the record owner of the home occupied by Mr. Chitwood, he was not a party to the construction contract.  Instead, Mr. Chitwood signed the contract as "owner."

Several provisions of the contract are pertinent to the issues presented in this appeal. The contract provides that Raines will maintain detailed accounting records regarding the project and that Mr. Chitwood will be afforded access to the records upon request.  Further, the contract states that Mr. Chitwood will be billed on a monthly basis by Raines and that he will pay the monthly invoices within ten days of receipt.  As expressed in the contract:

> If the Owner does not intend to pay an Invoice within the required period, the Owner agrees to notify RBI as soon as possible but no later than 10 days of receipt of the Invoice.  In the event the Owner fails to pay any payment, in whole or in part, due hereunder, RBI may cease work without breach of this contract pending payment.  The Owner agrees to pay any costs to RBI associated with the collection of any past due payments due RBI including interest.

The contract also contains an attachment, which incorporates additional provisions, including the following:

> The Owner and RBI agree to resolve all claims or disputes arising out of or relating to the Contract by working together until an agreeable solution is found.  In the event a mutual resolution cannot be found and the dispute results in litigation, the prevailing party shall be entitled to reimbursement by the other party for reasonable costs, expenses, and fees incurred.

Raines began construction activities for Mr. Chitwood on August 3, 2006, utilizing a job number of 6069.  The work for this first phase of the construction was substantially completed by October 2008, but not all of the work was completed to Mr. Chitwood's

satisfaction. In September 2009, Mr. Chitwood began transmitting letters to Matt Brown, Raines's project manager, detailing various problems with the construction. Mr. Brown responded to Mr. Chitwood's concerns and addressed the issues raised. At that time, Mr. Chitwood had not fully paid all charges relating to job number 6069, and after certain credits were applied by Raines, the remaining balance was calculated to be $76,762.71. According to Mr. Brown, a meeting was held with Mr. Chitwood on October 27, 2008, wherein Mr. Chitwood was provided with a full accounting of the cost of the project. Mr. Chitwood stated that he would pay the balance due in full. He further requested that Raines undertake additional work on another part of the residence.

The additional work ensued, designated for billing purposes as job number 8100. Although Mr. Chitwood paid the charges for job number 8100 in full, he did not pay the balance due regarding job number 6069. Various letters were exchanged between Mr. Chitwood and Mr. Brown. Eventually, a meeting was conducted in January 2010 with Mr. Chitwood, Mr. Brown, David Hammel (chief operating officer of Raines), and John Steele (Mr. Chitwood's comptroller) in attendance. At this meeting, Mr. Chitwood again agreed to pay the outstanding balance of $76,762.71 by April 2010. He also asked Raines to perform additional work. This subsequent agreement was memorialized in an email sent to Mr. Chitwood by Mr. Brown. Raines thereafter began the additional work, utilizing a billing job number of 0023. Mr. Chitwood paid in full the charges for job number 0023 but only paid $10,000.00 concerning job number 6069, leaving a balance due of $66,762.71.

Raines filed the instant action to recover the monies owed by Mr. Chitwood. He also named Mr. Chitwood's wife, Deborah Chitwood,[1] and Mr. Dreaden as defendants. The claims alleged included breach of contract, breach of duty of good faith and fair dealing, unjust enrichment, *quantum meruit*, and conversion. Raines also sought attorney's fees and injunctive relief to prevent Mr. Dreaden from selling the real property or otherwise interfering with Raines's ability to establish a lien upon its title.

Defendants filed a motion to dismiss, which was denied by the trial court. Defendants subsequently filed answers denying liability. Mr. Chitwood filed a counterclaim for breach of contract, promissory fraud, defective work, and violations of the Tennessee Consumer Protection Act. Following discovery, Defendants moved for partial summary judgment as to the claim for injunctive relief and all claims against Mr. Dreaden. The trial court granted partial summary judgment on the claim for injunctive relief, finding that Raines had failed to demonstrate that injunctive relief was necessary to prevent immediate and irreparable harm. The trial court denied the motion as to the claims against Mr. Dreaden, however,

---

[1]Mrs. Chitwood passed away during the pendency of this litigation, and Raines entered a voluntary nonsuit regarding the claims against her.

-3-

finding that he was an essential party to the action at bar.

A trial was conducted on July 25, 2013. Raines's witnesses included Mr. Brown; Tim Hall, the on-site job superintendent; Marvin Cornelison, president and CEO of Raines; Mr. Hammel; and Mr. Steele. These witnesses established that the work requested by Mr. Chitwood on the residence had been timely completed and conformed to a high standard of quality. Mr. Brown and Mr. Hammel testified that many of the concerns Mr. Chitwood had raised with regard to the construction were caused by circumstances unrelated to the work performed by Raines. The issues included poor design choices made by the Chitwoods, operator error, and normal wear and tear.

Raines demonstrated that monthly invoices detailing both the material and labor costs associated with the project were sent to Mr. Chitwood. Mr. Steele explained that he was able to create detailed spreadsheets, which separated the costs for labor and materials on various phases of construction, based on the invoices provided by Raines. Mr. Brown, Mr. Cornelison, and Mr. Steele testified that Raines in fact provided greater detail regarding costs when those details were requested by Mr. Chitwood. Mr. Cornelison stated that Mr. Chitwood's first missed payment occurred in August 2007, the date upon which Raines began applying a finance charge of eighteen percent per annum. According to Mr. Cornelison, this was the rate applied to all past-due accounts by Raines.

Mr. Steele testified that Mr. Chitwood instructed him to stop paying invoices on job number 6069 as of a certain date due to claimed problems with the work. He also stated that Mr. Chitwood told him not to pay finance charges. According to Mr. Steele, he was present at the meeting wherein Mr. Chitwood promised Mr. Hammel and Mr. Brown that he would finish paying for job number 6069 in full. He also confirmed that the parties agreed upon a balance due of $66,762.71. Mr. Hammel stated that Mr. Chitwood asked Raines to perform additional work after job number 0023 was complete. Mr. Hammel, however, refused to perform further work until the charges for job number 6069 were paid. According to Mr. Hammel, Raines was required to pay the subcontractors and other costs for job number 6069 regardless of whether Raines was paid by Mr. Chitwood. Consequently, Raines was damaged by the failure of payment by Mr. Chitwood.

Following the presentation of Raines's case-in-chief, Mr. Chitwood voluntarily nonsuited his claims against Raines. Mr. Chitwood and Mr. Dreaden then rested, presenting no evidence, and moved for an involuntary dismissal of Raines's claims. The trial court took the case under advisement and later issued a written memorandum opinion and order. In its order, the court found as follows:

Ample evidence was presented at trial that detailed the expenses

incurred on job 6069, which was due and owing.  Tellingly even Chitwood's former accountant, John Steele, testifies that each month he would receive the invoices on job 6069.  He stated he had significant enough information to break down the labor and materials and other costs onto his spreadsheets, which he prepared for Chitwood.  Steele further corroborated the testimony of other witnesses, that the parties had agreed to the total amount owed on job 6069 was $66,672.71.[2]

Steele testified that the 18% finance charge, which is at issue also in this trial, was provided in each and every statement he received from Raines. He independently verified that the calculations were correct.  Steele also testified that Chitwood told him not to pay the finance charges, because "Chitwood doesn't pay finance charges or late charges."  The Court finds the 18% interest should accrue from August 14, 2007.

The final argument is that Defendants Chitwood and Dreaden allege through their Answer that the term "fee" is insufficient to require the payment of attorneys fees pursuant to the contract between the parties.  The Court agrees with this argument.

The Court holds that the Plaintiff is not entitled to recover attorney fees. Tennessee follows the American rule on awarding attorney's fees which states that "a party in a civil action may recover attorney fees only if:  (1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception" applies. *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).  The Tennessee Supreme Court has held that in contract cases, a contractual or statutory provision only creates the right to recover attorney fees if it "specifically or expressly provides for the recovery of attorney fees." *Id*. at 309.  In the *Cracker Barrel* case, the contract at issue provided that the prevailing party should recover "all costs and expenses of any suit or proceeding." *Id*. at 307.  The Tennessee Supreme Court held that this language was not specific enough to award attorney fees as an exception to the American rule. *Id*. at 316.  In the case at hand, the contractual language is similar, stating that the prevailing party "shall

---

[2]There appears to be a typographical error in the trial court's order, as the parties agree that the amount sought was $66,762.71.  We will refer to the proper amount of $66,762.71 in this opinion, and we note that this typographical error does not affect the trial court's judgment or this Court's analysis. *See, e.g, In re Caleb L.C.*, 362 S.W.3d 581, 598 (Tenn. Ct. App. 2011) (finding that typographical errors noted in the trial court's detailed judgment did not affect the overall clarity of the judgment or this Court's analysis).

be entitled to reimbursement by the other party for reasonable costs, expenses, and fees incurred" if the dispute results in litigation. Pursuant to the holding in *Cracker Barrel*, this Court finds that the contractual language here is also not specific enough to award attorney fees under the American rule.

The trial court accordingly awarded Raines a judgment of $66,762.71, plus interest of eighteen percent per annum, beginning on August 14, 2007. The trial court did not award Raines any attorney's fees. Defendants timely appealed.

## II. Issues Presented

The parties present the following issues for our review, which we have restated slightly:

1. Whether the trial court erred in finding Mr. Dreaden liable to Raines and entering a judgment against Mr. Dreaden.

2. Whether the trial court erred in entering a judgment against Mr. Chitwood and Mr. Dreaden for $66,762.71 based on the proof presented by Raines.

3. Whether the trial court erred in awarding Raines pre-judgment interest at the rate of eighteen percent per annum.

4. Whether the trial court erred in failing to award Raines attorney's fees.

## III. Standard of Review

The standard of review is *de novo* with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *McCarty v. McCarty*, 863 S.W.2d 716, 719 (Tenn. Ct. App. 1992). No presumption of correctness attaches to the trial court's legal conclusions. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).

As our Supreme Court has explained:

The interpretation of written agreements . . . is a matter of law that this Court reviews de novo on the record according no presumption of correctness to the trial court's conclusions of law. A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. In interpreting contractual

language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. This Court's initial task in construing the lease at issue is to determine whether the language is ambiguous. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language.

Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." . . . When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties. An ambiguous provision in a contract generally will be construed against the party drafting it. Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract.

*Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611-12 (Tenn. 2006) (internal citations omitted).

### IV. Judgment Against Mr. Dreaden

Defendants assert that the trial court erred in entering a judgment against Mr. Dreaden, whom they claim was not an indispensable party inasmuch as he holds title to the subject real property as trustee. Defendants further argue that Raines could obtain complete relief from the contracting party, Mr. Chitwood, for damages. In support of their position, Defendants contend that: (1) once the claim for injunctive relief was dismissed, there no longer existed any basis for Mr. Dreaden to remain a named defendant; (2) no proof was presented that Mr. Dreaden had breached a contract, breached a duty of good faith and fair dealing, or engaged in conversion; and (3) Raines currently could not maintain a claim of unjust enrichment or *quantum meruit* against Mr. Dreaden. We will address each argument in turn.

The trial court granted summary judgment, dismissing Raines's claim for injunctive relief against Mr. Dreaden prior to trial. Raines contends, however, that as Mr. Dreaden maintains an interest in the property at issue, he is an indispensable party pursuant to Tennessee Rule of Civil Procedure 19.01, which states:

A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those

already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

Concerning joinder of a party, this Court has previously stated: "[Tennessee Rule of Civil Procedure 19.01] is designed to protect the interests of absent persons as well as those before the court from multiple litigation and inconsistent judicial determinations." *Citizens Real Estate & Loan Co., Inc. v. Mountain States Dev. Corp.*, 633 S.W.2d 763, 766 (Tenn. Ct. App. 1981). Raines asserts that because Mr. Dreaden is the record owner of the real property, Raines would not be able to attach a title lien to enforce its judgment without the benefit of Mr. Dreaden being joined as a party to the action.

As explained in this Court's opinion in *Moore v. Teddleton*, No. W2005-02746-COA-R3-CV, 2006 WL 3199273 at *6 (Tenn. Ct. App. Nov. 7, 2006), a "proper party is not the same as a necessary or indispensable party." (quoting *Brewer v. Lawson*, 569 S.W.2d 856, 858 (Tenn. Ct. App. 1978). This Court further elucidated:

A "proper party" to a lawsuit is one who has legal or equitable rights in the subject of the litigation. A proper party is so connected with the dispute as to be under an enforceable obligation to the plaintiff, or to have a right or position with regard to the subject of the litigation that entitles him to defend against the court's judgment. However, a proper party is not necessarily an indispensable party for the purposes of Tenn. R. Civ. P. 19.01. "Only a party who will be directly affected by a decree *and whose interest is not represented by any other party to the litigation* is an indispensable or necessary party, that is, one without which no valid decree may be entered settling the rights between the parties that are before the [c]ourt." *Brewer*, 569 S.W.2d at 858 (emphasis added).

*Moore*, 2006 WL 3199273 at *6 (other internal citations omitted) (holding that where the property owner's rights were represented by another party to the litigation, the property owner was not an indispensable party in that litigation). In *Brewer*, this Court held that the failure to include the mortgagee or the trustee under a trust deed was not fatal to the plaintiffs' action against the defendant landowner for damages and correction of the deed

description.  *Brewer v. Lawson*, 569 S.W.2d 856, 858 (Tenn. Ct. App. 1978).

In this case, Mr. Dreaden was not the trustee under a deed of trust; rather, he was listed as the record owner of the property, in his capacity as trustee, on the warranty deed. This does not, however, render Mr. Dreaden to be an indispensable party to this litigation because his interests were represented by Mr. Chitwood.  *See Moore*, 2006 WL 3199273 at *6.  As previously stated, "[o]nly a party who will be directly affected by a decree *and whose interest is not represented by any other party to the litigation* is an indispensable or necessary party."  *See Moore*, 2006 WL 3199273 at *6 (emphasis in original).

Raines presented no proof at trial against Mr. Dreaden regarding its claims of breach of contract, breach of the duty of good faith and fair dealing, or conversion.  As such, those claims against Mr. Dreaden should have been dismissed by the trial court.  In addition, Mr. Dreaden, as owner of the property, could not be sued under theories of unjust enrichment or *quantum meruit*[3] until Raines's remedies against Mr. Chitwood were exhausted.  *See Forrest Const. Co., LLC v. Laughlin*, 337 S.W.3d 211, 227 (Tenn. Ct. App. 2009).

In *Forrest*, the contractor filed a breach of contract action against the homeowner who signed the construction contract, based on the homeowner's failure to pay according to the terms of the contract.  *Id*. at 215.  The contractor also brought a claim against the homeowner's wife, who was not a party to the construction contract but was co-owner of the home, based on *quantum meruit* or unjust enrichment.  *Id*. at 227.  A *quantum meruit* action provides that a "party who has provided goods and services to another may recover the reasonable value of these goods and services."  *Id*.  This Court ruled that such a claim against a non-contracting owner is proper if:

> (1) there is no existing, enforceable contract between the parties covering the same subject matter,
>
> (2) the party seeking recovery proves that it provided valuable goods and services,
>
> (3) the party to be charged received the goods and services,

___

[3]As our Supreme Court noted in *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 154 (Tenn. 1966):

> Actions brought upon theories of unjust enrichment, quasi contract, contracts implied in law, and quantum meruit are essentially the same.  Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between parties, regardless of their assent thereto.

(4) the circumstances indicate that the parties involved in the transaction should have reasonably understood that the person providing the goods or services expected to be compensated, and

(5) the circumstances demonstrate that it would be unjust for the party benefitting from the goods or services to retain them without paying for them.

*See Forrest*, 337 S.W.3d at 227 (citing *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995)). This Court further ruled that if the plaintiff had a contract with a third party, the plaintiff also must show that any remedies against the contracting party have been exhausted and that the plaintiff still has not received the reasonable value of its services. *See Forrest*, 337 S.W.3d at 228.

In this case, Raines had not exhausted its remedies against Mr. Chitwood. Exhaustion of remedies requires more than sending bills and filing suit to collect a debt. *See The Window Gallery of Knoxville v. Davis*, No. 03A01-9906-CH-00225, 1999 WL 1068730 at *9 (Tenn. Ct. App. Nov. 24, 1999). As this Court explained:

> The only actions taken by Window Gallery to collect from Davis were to send bills to Davis, to call Davis, and to file suit against Davis. Window Gallery continues to maintain its suit against Davis and has not surrendered it as being futile in nature. . . . The phrase "exhaust its remedies" requires more of Window Gallery than it has done here. Window Gallery only has begun to pursue its remedies against Davis rather than having exhausted them. There is nothing in this record before us that shows further pursuit by Window Gallery of Davis through its lawsuit would be futile.
>
> We hold that while Window Gallery has taken some steps to attempt recovery from Davis, it has not exhausted its remedies against Davis. Window Gallery must exhaust its remedies against Davis before it can proceed against the Marlers under its theory of unjust enrichment.

*Window Gallery*, 1999 WL 1068730 at *10-11. Because Raines had not yet exhausted its remedies against Mr. Chitwood before filing suit against Mr. Dreaden for unjust enrichment, we conclude that Raines's claim of unjust enrichment against Mr. Dreaden must be dismissed without prejudice because it was filed prematurely. Inasmuch as Mr. Dreaden has not been shown to be an indispensable party to this litigation and no evidence was presented regarding any of Raines's other claims against Mr. Dreaden, the trial court erred in entering a judgment against him. We therefore reverse the trial court's judgment against Mr. Dreaden, and we dismiss with prejudice Raines's claims of breach of contract, breach of the duty of good faith

and fair dealing, and conversion, as against Mr. Dreaden only. We dismiss Raines's claim of unjust enrichment against Mr. Dreaden without prejudice to Raines's ability to refile this claim once its remedies against Mr. Chitwood have been exhausted.

## V. Proof of Damages

Defendants assert that as this contract was "cost plus," the agreement requires a showing of the actual cost of the project plus a certain percentage for overhead and profit. Defendants argue that in order to prove damages under such a contract, Raines would have to establish the actual cost of the work performed. Defendants assert that Raines failed to do so in this case and instead merely introduced a "representative sample" of cost invoices. Defendants contend that such evidence was ruled insufficient by this Court in *Forrest*, which likewise addressed a cost-plus contract. *See Forrest*, 337 S.W.3d at 223-24. In *Forrest*, this Court explained:

"In any cost-plus contract there is an implicit understanding between the parties that the cost must be reasonable and proper." *Kerner v. Gilt*, 296 So.2d 428, 431 (La. App. 4 Cir.1974). "The contractor is under a duty of itemizing each and every expenditure made by him on the job and where the owner denies being indebted to the contractor the latter has the burden of proving each and every item of expense in connection with the job." *Id.* Forrest Construction never itemized the expenditures it sought to recover from Mr. Laughlin. Instead, it submitted essentially unsubstantiated requests for draws. Moreover, when called upon to provide proper documentation and itemization of the costs, it provided a wholly disorganized, un-itemized box of documents, many of which were unrelated to the Laughlins' home. Forrest Construction failed to identify or itemize the charges that pertained to the Laughlins' home only, or charges for which the Laughlins may be partly but not wholly responsible. The box of documents—a two-foot-thick pile of check copies and invoices—that Forrest Construction provided was not sufficient to establish "the actual net costs of all direct materials, labor, services, and fees" that went into the Laughlins' home, nor were the prior draw requests. Moreover, Forrest Construction never provided "full back-up support for all amounts requested" and it failed to provide "accurate records."

During the trial, Forrest Construction submitted only a spreadsheet of its expenses and a so-called "representative sample" of invoices and receipts. The spreadsheet, however, provided no details, it simply listed check numbers and amounts of checks that Forrest Construction had written during the time frame the Laughlins' home was under construction. What is significant is the

spreadsheet failed to identify that the expenditures pertained to materials, labor, services, and fees that went into the construction of the Laughlins' home. It is undisputed that Mr. Laughlin requested documentation from Forrest Construction to account for the actual costs of construction. Forrest Construction responded by providing Mr. Laughlin with a box filled with numerous receipts and invoices from suppliers, subcontractors, etc. What is significant about the box of miscellaneous papers is the lack of organization that typically goes with billing and accounting, and the fact it contained bills wholly unrelated to the Laughlins' home. Moreover, Mr. Laughlin testified that the two-foot-thick pile of disorganized receipts and invoices did not answer his questions regarding costs he had paid previously and costs he was being asked to pay to complete his home. Mr. Laughlin also testified that when he asked Mr. Naive to provide additional information and documentation concerning costs related to his home, he was informed by Mr. Naive that the box contained the full and complete records of the construction on his home and no other information would be provided. Mr. Naive provided no contradiction to Mr. Laughlin's testimony concerning the documentation he provided.

The contract obligated Forrest to document "the actual net costs of all direct materials, labor, services, and fees that go into the entire project." Forrest merely provided a very disorganized array of its expenditures. The delivery of this box of invoices and receipts fell far short of its contractual obligation to establish that its expenditures were for materials, labor, services, and fees that went into the Lauglins' home and not for other projects. We also find it very significant that the so-called representative sample of invoices and receipts Forrest submitted in the draw requests did not match the spreadsheet submitted at trial. The sample submitted by Forrest Construction contained only fifteen invoices, which accounted for only $33,772.66 of costs, representing less than five percent of the cost to construct the home, and "payment records" of Forrest Construction, which consisted of handwritten notes and word processor documents with simply a check number and the amount of the check, but without the identity of the payee or the item denoted.

*Forrest*, 337 S.W.3d at 223-24 (additional citations omitted).

Raines contends that, contrary to Defendants' assertions, it did provide itemized billing statements showing the actual costs of the projects. We agree. A thorough review of the exhibits submitted at trial demonstrates that Raines maintained daily records itemizing the labor costs, number of laborers on site, activities of subcontractors, and tasks completed.

These records were input and compiled by Raines and utilized to create itemized invoices that were sent to Mr. Chitwood, containing a breakdown of charges for labor, equipment, materials, and subcontractors. Mr. Steele testified that the invoices were complete and allowed him to fully separate and itemize the costs of the project on his own spreadsheets. It was further shown that when Mr. Chitwood requested even greater detail regarding the costs of construction, Raines provided it to him.

The evidence preponderates in favor of the trial court's determination that Raines adequately proved its costs pursuant to this contract. Unlike the contractor in *Forrest*, there was no proof in the instant case of "disorganized, un-itemized" documents that were unrelated to the project, or "spreadsheet[s] [that] failed to identify that the expenditures pertained to materials, labor, services, and fees that went into the construction of the [subject] home." *Forrest*, 337 S.W.3d at 223-24. Instead, Raines provided spreadsheets itemizing the project transactions for subcontractors, materials, and equipment, and even provided detailed labor cost records that reflected individual hours charged for each date and worker involved. The proof provided by Raines was more than sufficient to demonstrate its costs with regard to this contract, and it was undisputed by the Defendants. As such, the evidence clearly preponderates in favor of the trial court's judgment in the amount of $66,762.71 against Mr. Chitwood.

## VI. Rate of Pre-Judgment Interest

The trial court awarded Raines interest in the amount of eighteen percent per annum, beginning in August 2007, the month when payment first became overdue. Defendants claim that this interest rate is exorbitant for a contract of this type and that they did not agree to pay this rate of interest. Defendants assert that while the agreement does mention interest on past due sums, it does not set forth a specific amount or percentage. Raines presented evidence that it routinely added an eighteen percent finance charge to all delinquent accounts.

As previously noted, the relevant contract provides:

If the Owner does not intend to pay an Invoice within the required period, the Owner agrees to notify RBI as soon as possible but no later than 10 days of receipt of the Invoice. In the event the Owner fails to pay any payment, in whole or in part, due hereunder, RBI may cease work without breach of this contract pending payment. **The Owner agrees to pay any costs to RBI associated with the collection of any past due payments due RBI including interest.**

(Emphasis added.)

Based on the above language, Mr. Chitwood clearly was aware of and agreed to pay the costs of collecting past due amounts to Raines "including interest." Further, Raines proved that it incurred expenses due to Mr. Chitwood's failure to pay, including the costs of paying for materials, labor, and subcontractors. There is no language in the contract, however, providing specifically for interest at a rate of eighteen percent per annum. Rather, this rate was unilaterally applied in the monthly billing statements sent to Mr. Chitwood after his balance became past due. Because the parties' agreement is silent regarding the proper rate of interest to be charged on delinquent payments, we must look to our statutory and case law for guidance regarding whether the rate sought to be applied by Raines is reasonable.

In the case of *McNeil v. Nofal*, 185 S.W.3d 402, 413-414 (Tenn. Ct. App. 2005), the parties' agreement provided that if the obligor failed to pay as required, the unpaid balance would bear interest "at the maximum lawful rate." This Court thus reviewed two statutes, Tennessee Code Annotated §§ 47-14-103 and 106, to determine what would be the "maximum lawful rate." *Id*. Tennessee Code Annotated §47-14-103 provides:

> Except as otherwise expressly provided by this chapter or by other statutes, the maximum effective rates of interest are as follows:
>
> (1) For all transactions in which other statutes fix a maximum effective rate of interest for particular categories of creditors, lenders, or transactions, the rate so fixed;
>
> (2) For all written contracts, including obligations issued by or on behalf of the state of Tennessee, any county, municipality, or district in the state, or any agency, authority, branch, bureau, commission, corporation, department, or instrumentality thereof, signed by the party to be charged, and not subject to subdivision (1), the applicable formula rate; and
>
> (3) For all other transactions, ten percent (10%) per annum.

This Court concluded that since the contract at issue provided no specific rate of interest, it would fall within the "all other transactions" provision contained in Tennessee Code Annotated § 47-14-103 (3), which mandates that an interest rate of ten percent per annum be applied. *See McNeil*, 185 S.W.3d at 414 (citing Tenn. Code Ann. § 47-14-103 (3) (2013)).

More recently, in the case of *Cumberland Properties, LLC v. Ravenwood Club, Inc.*, No. M2010-01814-COA-R3-CV, 2011 WL 1303375 (Tenn. Ct. App. Apr. 5, 2011), this Court was asked to determine the proper amount of interest to be charged when the parties'

contract provided for pre-judgment interest but did not specify a rate. This Court held that the proper amount of interest to be charged would be ten percent per annum, in accordance with Tennessee Code Annotated § 47-14-123 (2013). *Id*. at *15. For the foregoing reasons, we conclude that ten percent per annum would be proper and reasonable in this instance as well. As such, we remand for a recalculation of interest due, at a rate of ten percent per annum, beginning in August 2007.

## VII. Attorney's fees

Finally, Raines raises the issue of whether the trial court properly dismissed its claim for attorney's fees. Raines asserts that the parties' agreement provides that if a dispute between the parties results in litigation, the prevailing party is entitled to recover "reasonable costs, expenses, and fees incurred," which language, Raines contends, would obviously refer to attorney's fees. The interpretation of a contract is a question of law, and we review the trial court's conclusions as to the proper interpretation of the parties' contract *de novo*, with no presumption of correctness accorded to those conclusions. *See Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009).

As our Supreme Court has elucidated:

This Court has adhered strictly to the guiding principle that the American rule, prohibiting an award of attorney fees, will apply unless a contract specifically and expressly creates a right to recover "attorney fees" or some other recognized exception to the American rule is present. *See, e.g., Pullman Standard*, 693 S.W.2d at 338. The only way parties to a contract have been able to specifically and expressly create a right to recover attorney fees has been by incorporating the phrase "including reasonable attorney fees" or some other similar, yet equally specific, contractual language. *Compare Brunswick Acceptance Co. v. MEJ, LLC*, No. E2007-01819-COA-R3-CV, 2008 WL 4648350, at *7 (Tenn. Ct. App. Oct. 21, 2008) (app. for perm. app. denied Apr. 27, 2009) (upholding an award of attorney fees where the contractual language provided for the recovery of "all costs and expenses, including reasonable attorney's fees, incurred in enforcing the agreement"), and *ABC Painting Co. v. White Oaks Apartments of Hermitage*, No. M2006-00280-COA-R3-CV, 2007 WL 14250, at *5 (Tenn. Ct. App. Jan. 2, 2007) (upholding an award of attorney fees where the contractual language provided for "all costs and expenses of any legal action . . . including but not limited to, reasonable attorney's fees"), with *Kultura*, 923 S.W.2d at 540 (holding that the term "any loss" does not include an award for attorney fees), and *Holcomb*, 277 S.W.3d at 397 (holding that the contractual language to hold plaintiffs harmless from

"any cost, loss, damage, or expense arising solely out of any failure of the Tenant to comply with any of the requirements or provisions of th[e] Ground Lease" did not explicitly provide for the recovery of attorney fees incurred in enforcing its provisions).

Accordingly, if the parties intend to create contractually a right to recover attorney fees, the contractual language must specifically and expressly articulate this intent and not merely provide for recovery of "costs and expenses." Adhering to this bright-line rule provides certainty in contracting and is warranted by the public policy considerations supporting the American rule.

*Cracker Barrel*, 284 S.W.3d at 310-11.

Defendants argue that in this case, as in *Cracker Barrel*, the language of the agreement is insufficient to support an award of attorney's fees due to the omission of the possessive "attorney's" before the word, "fees," thus suggesting that "fees" refers to something other than attorney's fees. Defendants also assert that another provision in this agreement specifically refers to "attorney's fees" rather than just the term, "fees." Raines contends, however, that inclusion of the term, "litigation," preceding the reference to fees demonstrates that this is clearly a reference to attorney's fees. We agree with Raines.

In *Cracker Barrel*, the contract merely provided for the recovery of "all costs and expenses of any suit or proceeding," and the Court found this language insufficient to support an award of attorney's fees. *Cracker Barrel*, 284 S.W.3d at 311. The parties' agreement in this case, however, states that if "the dispute **results in litigation**, the prevailing party shall be entitled to reimbursement by the other party for reasonable costs, expenses, **and fees incurred**." (Emphasis added.) Reviewing this provision in its entirety, we conclude that the reference to litigation in combination with the language, "fees incurred," clearly and unambiguously demonstrates that "fees incurred" would include attorney's fees. The language incorporated in the parties' agreement is much more specific than broader references to "costs and expenses of any suit," "any cost," or "any cost, loss, damage, or expense." *Id*.; *see generally Richey v. Motion Indus., Inc.*, No. 3:07-CV-466, 2010 WL 1138295 (E.D. Tenn. Feb. 3, 2010), *report and recommendation adopted by* No. 3:07-CV-466, 2010 WL 1138298 (E.D. Tenn. Mar. 18, 2010) (holding that the term, "legal fees," used in the parties' agreement is not ambiguous and provides for an award of attorney's fees.)

We reverse the trial court's denial of an award of reasonable attorney's fees to Raines, pursuant to the parties' contract. We remand this action for a determination as to the proper

amount of such an award.

## VIII. Conclusion

Having determined that Raines adequately proved its entitlement to a judgment pursuant to the parties' contract, we affirm the trial court's judgment of $66,762.71 against Mr. Chitwood. We reverse the trial court's judgment against Mr. Dreaden, and dismiss with prejudice Raines's claims of breach of contract, breach of the duty of good faith and fair dealing, and conversion against Mr. Dreaden. We dismiss Raines's claim of unjust enrichment against Mr. Dreaden without prejudice. We modify the trial court's award of pre-judgment interest from the rate of eighteen percent per annum to ten percent in accordance with relevant statutory and case law. We also reverse the trial court's denial of Raines's claim for attorney's fees pursuant to the parties' contract. We remand for a determination of the proper amount of interest to be charged, as well as a reasonable award of attorney's fees. Costs on appeal are taxed to the appellant, H. Michael Chitwood.


_____

THOMAS R. FRIERSON, II, JUDGE

-17-