IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
February 16, 2021 Session

## AT-LAST, INC., D/B/A BLACKWATCH INVESTIGATION AND MITIGATION v. TERRY GLEN BUCKLEY, ET AL.

**Appeal from the Chancery Court for Shelby County**
**No. CH-19-0417-3   JoeDae L. Jenkins, Chancellor**

_____

**No. W2020-00249-COA-R3-CV**

_____

This case involves a company's claim for attorneys' fees and expenses for the alleged breach of a non-compete agreement by its former employee. After a temporary injunction hearing, the trial court determined that the former employee breached the agreement and granted the company a temporary injunction. The court did not consolidate the hearing on the merits under Tennessee Rule of Civil Procedure 65.04(7). Later, the claims were voluntarily dismissed, and the trial court awarded the company attorneys' fees and expenses under the "Remedies" section of the parties' agreement. The former employee appealed the trial court's decision to grant the company attorneys' fees and expenses. We reverse the trial court's award and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

William B. Ryan, Memphis, Tennessee, for the appellant, Terry Glen Buckley.

Ramon Damas and Charles Silvestri Higgins, Memphis, Tennessee, for the appellee, At-Last, Inc., d/b/a Blackwatch Investigation and Mitigation.

## OPINION

### I.     FACTS & PROCEDURAL HISTORY

The dispute in this case stems from an employment relationship that involved a non-

compete agreement. In April 2017, Terry Glen Buckley was hired to be a private investigator at At-Last, Inc., d/b/a Blackwatch Investigation and Mitigation ("Blackwatch"). Blackwatch is a Tennessee corporation, headquartered in Memphis, that specializes in private investigations for criminal defense attorneys and their clients.

Prior to joining Blackwatch, Mr. Buckley worked for the Jackson Police Department for approximately thirteen years. Mr. Buckley worked as an investigator for the last nine years of his employment at the Jackson Police Department. As an investigator, Mr. Buckley specialized in forensic examination of mobile devices. During his time in law enforcement, Mr. Buckley frequently came into contact with criminal defense attorneys in the Jackson community. After learning about Mr. Buckley's professional background, Blackwatch hired Mr. Buckley, in part, to expand its services to the Jackson community.

During Mr. Buckley's hiring process, Blackwatch became concerned that he would eventually become a competitor of Blackwatch. Blackwatch wanted to ensure that its effort in expanding into the Jackson market was protected. As a result, Mr. Buckley executed a non-compete agreement ("the Agreement") as a condition of his employment. The "Non-Compete" portion of the Agreement stated:

> During this agreement [Mr. Buckley] shall not represent, provide services for, or engage in any other business of a similar nature to the business of BLACKWATCH (providing investigative or expert services to attorneys) without the written consent of BLACKWATCH. . . .

> [Mr. Buckley] warrants and guarantees that during this agreement and for the twelve month period following the termination of this agreement [he] shall not directly or indirectly engage in any similar business (Providing investigative or expert services to attorneys) with BLACKWATCH current clients or BLACKWATCH former clients. Nor shall [Mr. Buckley] solicit any client of BLACKWATCH for the benefit of [Mr. Buckley] or a third party that is engaged in a similar business to that of BLACKWATCH or hire any employees or staff of former employees or staff of BLACKWATCH.

> Furthermore, [Mr. Buckley] warrants and guarantees that for the twelve month period following the termination of this agreement [he] shall not directly or indirectly engage in any similar business (Providing investigative or expert services to attorneys) at all within a 100 mile radius of the princip[al] office of BLACKWATCH.

The Agreement also contained a "Remedies" section that stated:

> Should [Mr. Buckley] breach any of the provisions of this Agreement by . . . a breach of the non-compete provision, [Mr. Buckley] agrees to

reimburse [Blackwatch] for any loss or expense incurred by [Blackwatch] as a result of such . . . breach of the non-compete, including without limitation court costs and reasonable attorney's fees incurred by [Blackwatch] in enforcing the provisions hereof.

Mr. Buckley joined Blackwatch in April 2017. At the time Blackwatch hired Mr. Buckley, he was not a licensed private investigator. Blackwatch helped Mr. Buckley obtain his private investigator license by assisting him with the application and paying the corresponding fees. Aside from providing financial assistance for Mr. Buckley's license, the parties dispute the amount of support and training that Mr. Buckley received. Blackwatch asserts that it provided essential materials and in-depth training for Mr. Buckley. In contrast, Mr. Buckley asserts that he did not receive unique training and that the materials that he was provided were generic or publicly available.

After Mr. Buckley joined Blackwatch, Blackwatch began to market him as a private investigator in the Jackson legal community. Blackwatch created promotional materials that highlighted Mr. Buckley's credentials and organized events to help introduce him to criminal defense attorneys. Mr. Buckley did not work as a private investigator for any Jackson-area attorneys prior to joining Blackwatch. However, he claims that he had previous relationships with all of the attorneys that he interacted with while employed at Blackwatch. During his time at Blackwatch, Mr. Buckley performed investigative services for several criminal defense attorneys in Jackson. Prior to Mr. Buckley being hired, Blackwatch did not perform any work for Jackson-area attorneys.

In December 2018, Mr. Buckley voluntarily resigned from Blackwatch. As part of his resignation, Mr. Buckley drafted a resignation letter to the owners of Blackwatch, LeAnna and Claiborne Ferguson.[1] In the letter, Mr. Buckley indicated that he intended to leave Blackwatch during the first quarter of 2019 to open his own private investigation company in Jackson.

In January 2019, Mr. Buckley began performing private investigative services for C. Mark Donahoe, a criminal defense attorney who is based in Jackson. Mr. Buckley first met Mr. Donahoe while he was employed at the Jackson Police Department. While he was employed at Blackwatch, Mr. Buckley performed investigative services for Mr. Donahoe. Later in January 2019, Mr. Buckley and Mr. Donahoe formed 731 Investigations, LLC. Through 731 Investigations, Mr. Buckley performed investigative services for Mr. Donahoe and other Jackson-area attorneys that were former clients of Blackwatch.

Displeased with Mr. Buckley's new business venture, Blackwatch sought to enforce the non-compete portion of the Agreement. As a result, Blackwatch initiated the instant

---

[1] Mr. Ferguson founded Blackwatch in 2009 but is no longer involved in the day-to-day operations of the business. Instead, Mrs. Ferguson now operates the business.

case by filing a complaint for injunctive relief against Mr. Buckley and 731 Investigations.[2] In its complaint, Blackwatch alleged that Mr. Buckley and 731 Investigations were located within 100 miles of Blackwatch's principal office. Thus, it further alleged that Mr. Buckley was in violation of the Agreement by performing investigative or expert services to criminal defense attorneys in West Tennessee. Based on these allegations, Blackwatch requested that the trial court enter a temporary restraining order to prevent Mr. Buckley from continuing to offer his services to attorneys in West Tennessee.

On March 25, 2019, the trial court entered a temporary restraining order under Tennessee Rule of Civil Procedure 65.03, stating that Mr. Buckley and 731 Investigations were enjoined from soliciting or accepting new business in Jackson, Tennessee. To determine whether a temporary injunction should be granted, the trial court conducted an evidentiary hearing on March 29, 2019 and April 9, 2019.

At the two-day evidentiary hearing, Mrs. Ferguson, Mr. Ferguson, Mr. Buckley, and Mr. Donahoe testified. Eight exhibits were entered for the court's consideration, including a copy of the Agreement.

Mr. and Mrs. Ferguson testified on the history of Blackwatch, the company's intention to expand into the Jackson area, the hiring and employment of Mr. Buckley, and the events surrounding Mr. Buckley's resignation. Specifically, Mrs. Ferguson asserted that Blackwatch provided Mr. Buckley with specialized training and development as a private investigator. However, she also admitted that Mr. Buckley's responsibilities as a private investigator were similar to his previous duties as a police investigator.

Mr. Buckley testified on his background as a police officer and as a private investigator. He emphasized that he had personal relationships with all of the Jackson-area criminal defense attorneys before they became clients of Blackwatch. Many of those relationships became professional when he was hired at Blackwatch. In contrast to the statements made by Mrs. Ferguson, Mr. Buckley stated that Blackwatch did not provide him with unique or specialized training. Similarly, he claimed that he acquired all of his skills as an investigator prior to being hired. Mr. Buckley verified that he understood the terms of the Agreement at the time he was hired, that he later formed the opinion that the agreement was unenforceable, and that he began providing services to former clients of Blackwatch when he formed 731 Investigations.

Mr. Donahoe testified on his history with Blackwatch as a criminal defense attorney and the evolution of his relationship with Mr. Buckley. Mr. Donahoe verified that he met Mr. Buckley when he was an investigator for the Jackson Police Department, well before Mr. Buckley was hired by Blackwatch. Mr. Donahoe was not a client of Blackwatch before

---

[2] The complaint was also filed against Mr. Donahoe and his law firm, The Donahoe Firm, PLLC. However, the claims asserted against these parties are not pertinent to this appeal.

Mr. Buckley's hire. However, he stated that he became a client of Blackwatch after Mr. Buckley was hired because of their prior relationship. He also claimed that Blackwatch would not have received any clients from Jackson without Mr. Buckley working as an investigator. Joe H. Byrd, Jr.—a fellow criminal defense attorney in Jackson—also stated that he only considered using Blackwatch's services because of his admiration for Mr. Buckley's investigative skills.[3]

At the conclusion of the evidentiary hearing, the trial court took the matter under advisement. On May 16, 2019, the trial court entered a written order, granting a temporary injunction in favor of Blackwatch.

In its written order, the trial court made several findings of fact on the circumstances surrounding the Agreement. Specifically, the court found that Mr. Buckley voluntarily executed the Agreement after having adequate time to review and consider its terms. Additionally, the court stated that Blackwatch did not provide Mr. Buckley with specialized or unique training, but it did market his services to attorneys in the Memphis and Jackson communities. The court also found that Mr. Buckley had previous relationships with several criminal defense attorneys in Jackson but that they were not professional relationships until he was hired at Blackwatch. The court further found that Mr. Buckley and 731 Investigations were performing "investigative services" for former clients of Blackwatch within 100 miles of Blackwatch's principal office in Memphis.

Addressing the terms of the Agreement, the court concluded that the geographic and temporal scopes were unreasonable. Believing the geographic scope was too broad, the court modified the agreement by eliminating the 100-mile geographic restriction. The court modified the temporal scope by reducing the enforcement period from twelve months to nine months. The court determined that the nine-month enforcement period began on December 18, 2018, the date Mr. Buckley resigned.

The trial court concluded that, as modified, the Agreement was valid and enforceable and that Mr. Buckley breached the agreement by providing investigative services to former clients of Blackwatch. Based on Blackwatch's investment and efforts to expand into the Jackson market, the court concluded that Blackwatch established a protectable business interest under the Agreement. The court concluded that Blackwatch had a strong likelihood of success on the merits and that the threat of irreparable harm to Blackwatch in the absence of an injunction outweighed any potential harm to Mr. Buckley if an injunction was granted. As a result, the trial court granted a temporary injunction in favor of Blackwatch under Tennessee Rule of Civil Procedure 65.04(2). Mr. Buckley was enjoined from providing private investigation or expert services to former clients of

---

[3] A declaration of Joe Byrd was entered as an exhibit at the evidentiary hearing. In the declaration, Mr. Byrd also stated that he would not have become a client of Blackwatch had it not been for Blackwatch hiring Mr. Buckley.

Blackwatch, including Mr. Donahoe, Mr. Byrd, and several other Jackson-area attorneys. The injunction was set to last until September 18, 2019, nine months after Mr. Buckley's resignation.

On June 21, 2019, Blackwatch filed a motion for attorneys' fees and expenses against Mr. Buckley. Blackwatch argued that as the "prevailing party," it was entitled to fees and costs under the "Remedies" portion of the Agreement. Mr. Buckley opposed the motion, claiming that it was premature. In his response, Mr. Buckley argued that because the matter was not consolidated for a trial on the merits under Tennessee Rule of Civil Procedure 65.04(7), the motion was premature because the court had yet to make a final decision.

The trial court heard Blackwatch's motion for attorneys' fees and expenses and entered an order that stated the motion was "well taken." In the order, the court also stated that it reserved its ruling on the motion until the case had concluded.

On October 28, 2019, after the nine-month enforcement period ended, Blackwatch filed a renewed motion for attorneys' fees and expenses. Blackwatch requested $26,748.00 in attorneys' fees and $1,062.09 in expenses for enforcing the Agreement.

In response, Mr. Buckley opposed the motion and again asserted that it was premature because the matter was never consolidated for a trial on the merits pursuant to Rule 65.04(7).

On November 22, 2019, the trial court entered an order granting a voluntary dismissal for all defendants. Despite the dismissal, the court specifically reserved its ruling on the request for attorneys' fees and costs.[4]

On January 17, 2020, the trial court entered its final written order. In its final order, the court granted Blackwatch's renewed motion for attorneys' fees and expenses. The court awarded Blackwatch $20,000 in attorneys' fees and $891.50 in litigation expenses to be paid by Mr. Buckley.

Mr. Buckley appealed.

## II. ISSUE PRESENTED

Mr. Buckley raises a single issue on appeal, which we have reworded:

---

[4] After the court granted the voluntary dismissal of the defendants, Mr. Buckley filed a supplemental response to Blackwatch's motion, arguing that the court no longer had jurisdiction over the case.

Whether the trial court erred in assessing attorneys' fees and expenses against Mr. Buckley in favor of Blackwatch.

For the reasons stated herein, we reverse the trial court's decision to award Blackwatch attorneys' fees and expenses and remand.

### III. STANDARD OF REVIEW

Whether a party is entitled to attorney's fees under a contract is a question of law that is reviewed *de novo*. *Eberbach v. Eberbach*, 535 S.W.3d 467, 473 (Tenn. 2017) (stating the standard of review for awarding attorney's fees under marital dissolution agreement).

### IV. DISCUSSION

While the trial court proceedings centered on the enforceability of the Agreement, on appeal, the sole issue is whether the trial court erred in awarding Blackwatch attorneys' fees and expenses under the Agreement. Tennessee courts follow the "American Rule" on attorney's fees. *Id.* at 474. Under the American Rule, parties are responsible for their own attorney's fees. *Id.* (citing *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 309 (Tenn. 2009)). There are exceptions to this rule, one of which is a "contractual or statutory provision [that] creates a right to recover attorney's fees." *Id.* One contractual exception to the "American Rule" is enforceable non-compete agreements that provide for an award of attorney's fees. *See Hogan v. Coyne Intern. Enters. Corp.*, 996 S.W.2d 195, 204-05 (Tenn. Ct. App. 1998). However, we emphasize that this Opinion does not address the enforceability or reasonableness of the non-compete provision in the Agreement. The disposition of this appeal does not hinge on this inquiry. Instead, the determinative factor here is the lack of finality of the proceeding. Although the parties had a lengthy hearing on the temporary injunction, which resulted in several findings by the court, it was *not* a trial on the merits of the case.

"Rule 65.04(7) of the Tennessee Rules of Civil Procedure permits a trial court to consolidate a [temporary] injunction hearing with the trial of the action on the merits." *Clinton Books, Inc. v. City of Memphis*, 197 S.W.3d 749, 755 (Tenn. 2006). Accordingly, Rule 65.04(7) states, "[b]efore or after the commencement of the hearing of an application for a [temporary] injunction, the Court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." The United States Supreme Court has stated that in order for a trial court to consolidate a temporary injunction hearing with a trial on the merits, "the court must provide the parties with '"clear and unambiguous notice . . . either before the hearing commences or at a time which will still afford the parties a full opportunity to present their respective cases."'" *Clinton Books, Inc.*, 197 S.W.3d at 755 (omission in original) (quoting *Univ. of Tex. v. Camenisch*, 451

- 7 -

U.S. 390, 395 (1981)).[5]  Similarly, the Tennessee Supreme Court stated that courts "must provide the parties with notice before issuing an order of consolidation in accordance with Rule 65.04(7)." *Id.*

In the order granting the temporary injunction, the trial court found that the Agreement was "valid and enforceable as modified" and that Mr. Buckley "breached the Agreement" by providing investigative services to former clients of Blackwatch.  However, temporary injunctions are "provisional in nature" and are "not to be used as a determination of the rights of the parties involved." *Memphis Retail Inv'rs Ltd. P'ship v. Baddour*, 1988 WL 82940, at *2 (Tenn. Ct. App. Aug. 10, 1988).  Therefore, "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Univ. of Tex.*, 451 U.S. at 395 (citing *Indus. Bank of Wash. v. Tobriner*, 405 F.2d 1321, 1324 (D.C. Cir. 1968)).

There is no dispute that there was never a trial on the merits because the trial court did *not* consolidate the temporary injunction hearing under Rule 65.04(7).  Instead, in November 2019, more than six months after it granted Blackwatch a temporary injunction, the court granted Blackwatch's request to voluntarily dismiss the defendants.  In its order granting the voluntary dismissal, the trial court reserved ruling on Blackwatch's motion for attorneys' fees and expenses.  Approximately two months later, the court granted Blackwatch attorneys' fees and expenses under the "Remedies" section of the Agreement.  Without properly consolidating the temporary injunction hearing under Rule 65.04(7), this award was erroneous.  The trial court never made a final determination on the merits of the case, and specifically on whether Mr. Buckley breached the non-compete agreement.  Therefore, we reverse the trial court's grant of attorneys' fees and expenses.

For comparison, the terms of the Agreement in this case dictate a different outcome than the non-compete agreement in *Otter's Chicken Tender, LLC v. Coppage*, 2011 WL 2552663.  In *Coppage*, the parties had a non-compete agreement that included an "attorney fee" provision.  *Id.* at *1.  Unlike the Agreement in this case, the provision in *Coppage* provided an award of attorney's fees for the "prevailing party" in the event of litigation. *Id.*  After an evidentiary hearing, the trial court in *Coppage* issued a temporary injunction that restrained the defendant-employee from being employed by a competitor of the plaintiff.  *Id.*  Pursuant to a non-disclosure provision in the parties' agreement, the injunction also required the defendant to return copies of confidential information and trade secrets.  *Id.*  Before a permanent injunction was issued, on cross motions for summary judgment, the trial court resolved all of the asserted claims.  *Id.* at *2.  The court also extended the temporary injunction to the final date of the parties' non-compete provision.

---

[5] Because Rule 65.04(7) and Federal Rule of Civil Procedure 65(a)(2) share identical language on consolidating a temporary injunction hearing, Tennessee courts have relied on federal law as persuasive authority for construing Rule 65.04(7).  *See id.*; *Total Garage Store, LLC v. Moody*, No. M2019-01342-COA-R3-CV, 2020 WL 6892012, at *7 (Tenn. Ct. App. Nov. 24, 2020).

*Id.*

On appeal, this Court determined that the plaintiff-employer was entitled to attorneys' fees under the parties' agreement as the "prevailing party." *Id.* at *5-6. This Court concluded that the plaintiff was the "prevailing party" because the temporary injunction secured relief by enforcing the non-compete and non-disclosure provisions of the parties' agreement. *Id.* at *6.[6]

Unlike the agreement in *Coppage*, in the present case, the "Remedies" section of the Agreement does *not* contain language that permits an award of attorney's fees for the "prevailing party." Instead, the section states that Mr. Buckley shall reimburse Blackwatch for attorney's fees and expenses *if he breaches* the non-compete provision. Meaning, Blackwatch's claim for attorneys' fees is not determined by whether it succeeded in limiting Mr. Buckley's employment under the non-compete provision. Instead, Blackwatch was only entitled to attorneys' fees and expenses if Mr. Buckley was found to have breached the Agreement.[7] This holding is based on a plain reading of the Agreement. *See Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013) (citing *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009) ("The literal meaning of the contract language controls if the language is clear and unambiguous.")).

In sum, the trial court never consolidated the temporary injunction hearing with a trial on the merits under Rule 65.04(7), and a separate trial on the merits was never held. As a result, the court never made a final determination on whether Mr. Buckley breached the non-compete provisions of the Agreement. The court's findings following the temporary injunction hearing were non-final, subject to change, and cannot be used to determine the rights of the parties without the proceedings being consolidated under Rule 65.04(7). *See Univ. of Tex.*, 451 U.S. at 395 (stating "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits"); *Clinton Books, Inc.*, 197 S.W.3d at 755 (stating "a court must provide the parties with notice before issuing an order of consolidation in accordance with Rule 65.04(7)"); *Memphis Retail Inv'rs Ltd. P'ship*, 1988 WL 82940, at *2 (stating a court's temporary injunction rulings are "not to be used as a determination of the rights of the parties involved").

Without a determination on the merits of whether Mr. Buckley "breached" the

---

[6] Although the defendant-employee succeeded on certain issues at the summary judgment phase, "[t]he fact that [the] plaintiff did not succeed on all of the claims asserted is a factor to be addressed in the trial court's determination of a reasonable fee." *Id.* at *2, *6. (citing Tenn. Sup. Ct. R. 8, RPC 1.5).

[7] In its complaint and at trial, Blackwatch also asserted that Mr. Buckley improperly retained confidential information belonging to Blackwatch. The "Remedies" section of the Agreement also entitled Blackwatch to attorney's fees and expenses if Mr. Buckley disclosed or used confidential information belonging to Blackwatch without its consent. However, the trial court found that Mr. Buckley did not retain confidential information belonging to Blackwatch. This determination is not challenged on appeal.

Agreement, Blackwatch had no basis to assert a claim for attorney's fees and expenses. *See Dupuy v. Samuels*, 423 F.3d 714, 723 (7th Cir. 2005) (stating that because the trial court did not consolidate the preliminary injunction with a trial on the merits under Federal Rule of Civil Procedure 65(a)(2), an "award of attorneys' fees, even on an interim basis, was premature").

Based on our foregoing discussion, the remaining arguments presented by the parties are pretermitted.

## V. CONCLUSION

For the reasons stated herein, we reverse the trial court's decision to require the appellant, Terry Glen Buckley to pay the attorneys' fees and expenses of the appellee, At-Last, Inc., d/b/a Blackwatch Investigation and Mitigation.

We remand for further proceedings as may be necessary. Costs of this appeal are taxed to the appellee, At-Last, Inc., d/b/a Blackwatch Investigation and Mitigation, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE